524 So.2d 1348 (1988)
Mary Jo MERGEN, et al
v.
PIPER AIRCRAFT CORP., et al. MOORE DATA SYSTEMS, INC., et al
v.
PIPER AIRCRAFT CORP., et al. Arthur J. JONES, et al.
v.
MOORE DATA SYSTEMS, INC., et al. Thomas MERGEN, et al
v.
PIPER AIRCRAFT, INC., et al. Robert MERGEN, et al
v.
PIPER AIRCRAFT CORP., et al.
Nos. CA 86 1164 to CA 86 1168.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
Rehearing Denied June 24, 1988.
*1350 Wendall H. Gauthier, Metairie, for plaintiffs-appellants Mary Jo Mergen, Thomas Mergen, and Robert Mergen.
Robert E. Kerrigan, Jr., New Orleans, for plaintiffs-appellants Moore Data Systems, Inc. and Aetna Cas. & Sur. Co.
Walton J. Barnes, Baton Rouge, for plaintiffs-appellants Arthur J. Jones, Annie L.K. Jones, and Mary H. Jones.
L. Albert Forrest, New Iberia, for defendant-appellee Avco Corp., Lycoming Div.
Donald O. Collins, New Orleans, for defendant-appellee Piper Aircraft Corp.
Robert D. Hoover, Baton Rouge, for intervenor-appellant Hartford Acc. & Indem. Co.
W. Luther Wilson, Baton Rouge, for defendant-appellee Louisiana Aircraft, Inc.
Terrance C. McRea, Baton Rouge, for defendant-appellee The Bendix Corp.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
EDWARDS, Judge.
This case arose from the October 31, 1982, crash of a twin-engine Piper airplane which killed the pilot, Jack Mergen, and his two passengers. All three men worked for Moore Data Systems, Inc., (MDSI) the owner of the plane. MDSI purchased the new Piper aircraft on February 26, 1982, from Louisiana Aircraft, Inc. The plane was manufactured by Piper Aircraft Corp. (Piper), its engines were designed and manufactured by Avco Corp., Lycoming Division (Avco), and its magnetos were designed, manufactured and distributed by Bendix Corp. Bendix settled with all claimants for $20,000.00 and deposited the funds in the registry of the court to be distributed ratably among the prevailing parties.
Mary Jo Mergen, Jack's widow, and his two children from a previous marriage, Thomas and Robert Mergen, filed suit for Jack's wrongful death, and MDSI filed suit in redhibition and negligence to recover the value of the plane, against Piper, Louisiana Aircraft, Avco, and Bendix. Mary Helen Jones and her parents, Arthur and Ann Jones, sued claiming they suffered mental anguish and property damage as a result of the plane crash in their yard. They added MDSI and its insurer, Aetna Casualty & Surety Co., as defendants in their suit.
The trial court found that the Mergens and MDSI did not prove their case by a preponderance of the evidence. The court entered judgment in favor of Mary Helen Jones and against MDSI and Aetna in the amount of $8,921,39 as special damages and awarded Mr. and Mrs. Arthur Jones $1,000.00 each for their mental anguish. The court ordered the $20,000.00 settlement from Bendix to be used to satisfy the Jones' awards and the remainder allocated to help defray the costs in the Mergen and MDSI lawsuits. Hartford Accident and Indemnity Company, MDSI's compensation insurer, intervened seeking to recover the amount of survivor's benefits it paid to Mary Jo Mergen to the date of trial, along with a credit on future payments to be calculated from the recovery had by Mrs. Mergen in the wrongful death suit.

FACTS
On the morning of October 31, 1982, Jack Mergen and two co-workers took off from the Baton Rouge airport in a twin-engine Piper aircraft in zero visibility because of the fog and without radio contact or radar guidance from the closed airport tower. Three minutes after takeoff, the plane went down in a lot in Green Acres Subdivision killing all three men. Although the *1351 post-crash fire destroyed virtually all of the aircraft, it was determined that the right engine had been shut off prior to impact, as evidenced by the feathering of the propellers, and the left engine was operating at between eighty to one hundred percent of its power. Also, the right engine oil dipstick was discovered bent and out of its socket and the crankcase was crushed. While the aircraft was designed to fly on one engine, with the right engine out, the pilot would have to keep the left engine at full throttle in order to maintain the altitude and climbing speed. The Mergens and MDSI allege that but for the left engine failure, Jack could have safely feathered the right engine and landed the plane. Defendants argue that Jack feathered the right engine for no reason and then lost control of the aircraft when the plane rolled to the right due to the left engine torque.
The Mergens and MDSI contend that the aircraft in question had two serious problems when it left the manufacturer. On the first four test flights by Piper, the cylinder head temperature hit the "red line," indicating a temperature of at least 500 degrees Fahrenheit. After the first flight, Piper removed and replaced the right cylinder head temperature probe and checked the opening of the cowl flap door. After the second test flight, Piper removed and replaced the temperature probe. After the third failure, the fuel injector nozzles were cleaned and the magneto timing was reset. After the fourth time, Piper removed and replaced the combination gauge, an instrument used to read the cylinder head temperature, oil temperature, and oil pressure. Plaintiffs' expert, William Kelly, testified that it "was highly possible the airplane left the factory with the cylinder head temperature still being high but with a temperature gauge installed that indicated something below the red line." The cylinder head temperature is critical because high cylinder head temperatures lead to detonation which in turn can do physical damage to an engine. Detonation occurs when the fuel layer mixture in the cylinders explodes suddenly instead of burning smoothly.
At the time the aircraft was manufactured, it also experienced high manifold pressures. There is a real danger in having these high pressures because they demonstrate that the aircraft engines are exceeding their capabilities by producing more horsepower than they were designed to do in order to perform the low climb test. The record supports a finding that the two problems of high cylinder head temperatures and high manifold pressures caused severe wear and detonation of the aircraft engines. On the morning of October 31, 1982, once the right engine was feathered, the left engine was forced to run at maximum power under its most severe operating conditions. Being prematurely aged and severely worn, the left engine quit.
When MDSI purchased the aircraft, it had defective "turbo exhaust clamps" which caused the right engine to catch on fire during flight thirty-seven days later. Jack Mergen saw the flames and made a successful emergency landing in Tallahassee, Florida. On June 22, 1982, extensive fire damage to the left engine was caused by a defective clamp. As a result of these fires, the magneto in the right engine had to be replaced. It was not until the magneto was removed, however, that the cracked internal phenolic components and a burnt tower were visible. Even after the right magneto was found to be damaged, the left magneto was never pulled and the internal components examined by Louisiana Aircraft or Avco. All of the general maintenance and repairs on the aircraft were performed by Louisiana Aircraft under the warranty provided by Piper. After the second fire, Piper agreed to extend the warranty an additional six months. Thus, when the plane crashed on October 31, it was still under warranty by Piper.
On July 19, 1982, during a routine 50 hour oil change, a wear check analysis of the oil indicated severe internal wear together with high iron content evidencing rust. Mr. Charles Ward, a service engineer with Avco for over fourteen years, was sent to Louisiana Aircraft to troubleshoot the problems the aircraft was having with *1352 its right engine. After reviewing the number three cylinder piston of the right engine, Ward found signs of possible detonation. The right magneto was also improperly timed which can cause detonation. From the record, it seems that the only time the right magneto timing was set was on January 19, 1982, by Piper after the third unsuccessful test flight. Expert David Hall testified that the oil analyses done at 165, 173.2, and 223 hours were all unsatisfactory and indicated severe wear. When the engines were torn down after the crash, they were described as being similar to engines with 1500 hours in terms of internal wear, when in fact they had less than 290.

EXPERT WITNESSES
Plaintiffs contend the trial court erred in accepting the testimony of defendants' expert witnesses, Dr. Charles Manning and Mr. Jack Eggspuehler, that Jack Mergen must have failed to lock down the oil dipstick in the right engine during his pre-flight inspection. Dr. Manning and Mr. Eggspuehler testified that this would cause the oil to blow out of the engine onto the nacelle, causing a fire or smoke which would be seen once the oil contacted the exhaust on the turbo charger. Plaintiffs' experts, William Kelly and Dave Hall, testified that there was only one inch of space between the top of the dipstick and the airplane's cowling. They contend that the dipstick must have been bent as a result of the accident after the cowling was torn or ripped upon impact with the ground. In support of this argument, they point to the fact that the oil sump/crankcase had been crushed upon impact. Defendant's expert, Jack Eggspuehler, admitted that he was not aware that the crankcase had been found crushed. Clearly, the evidence does not support a finding that the decedent failed to seat the oil dipstick properly. Both the position of the cowling and the location of the bend in the oil dipstick support a finding that the dipstick did not come out until after the plane hit the ground.
The Mergens and MDSI also allege that the trial court misstated the testimony of the ground witnesses concerning the sounds the plane was making prior to the crash by saying the engine was revving up and down. The record clearly establishes that the witnesses all heard a single engine rev up and then quit just before impact. The evidence of witnesses which stands uncontradicted must be accepted as true. Johnson v. Insurance Co. of N. Am., 454 So.2d 1113, 1117 (La.1984). Mr. Eggspuehler testified that the witnesses did not actually hear what they thought they had heard due to their "likely perception." Dr. Manning also testified that he could not explain the left engine cutting off unless what was being done was the pilot revving the engine up and down. When confronted that this was not consistent with what the witnesses heard, Manning was of the general opinion that credit could not be placed on what the ground witnesses said. The weight to be given the testimony of an expert witness is determined by his qualifications, experience in the field, and the facts upon which his opinion is based. The trial court has considerable discretion in accepting or rejecting such testimony. Edmond v. Tyler Bldg. and Constr., 438 So.2d 681, 686 (La. App. 2d Cir.1983). After considering the testimony of the witnesses and the evidence as a whole, we find that the trial court clearly erred in accepting the speculations of defendants' experts regarding the sounds the plane made before the crash.
Defendants also offered expert testimony concerning Jack Mergen's flying ability. Mr. Jeffrey Reich, a flight instructor accepted as an expert by the trial court, testified that Jack was not proficient in scanning the instruments when he attended Flight Safety School. He also stated that he advised Jack to return every six months for additional training. Mr. Wright did acknowledge that Jack passed the course. Plaintiffs rebutted this inference that Jack was not a skilled pilot by offering evidence of his training and experience. We find especially convincing the fact that he had previously experienced a similar emergency and made a successful landing.
*1353 An appellate court may not substitute its own version of the facts, however reasonable it may be, for that found by the trial court, unless the trial court's findings are not reasonably supported by the credible evidence. Andries v. Moore, 467 So.2d 1312, 1314 (La.App. 3d Cir.), cert. denied, 474 So.2d 1305 (La.1985). Our duty is to afford great weight to the factual conclusions of the trial court because of its opportunity to evaluate live witnesses as compared to our examination of a "cold record." Grace Apartments v. Hill, 428 So.2d 862, 864 (La.App. 1st Cir.1983). In this case, the trial court's conclusion that Jack Mergen lost control of the aircraft after he turned the right engine off is not supported by the evidence adduced at trial.

NEGLIGENCE
The statutory bases for Louisiana negligence law are contained in LSA-C.C. arts. 2315 and 2316. Article 2315 states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it...." Article 2316 provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, imprudence, or his want of skill." Under Louisiana law, a party attempting to recover under a negligence theory must prove that defendant had a duty to observe a certain standard of care toward the plaintiff; defendant breached this duty by falling below that standard; defendant's breach of this duty was a cause-in-fact of the accident; and the harm which actually occurred was the sort of harm that defendant's legal duty was designed to prevent. Walker v. Union Oil Mill, Inc., 369 So.2d 1043, 1047 (La.1979).
In the instant case, defendants owed a duty to plaintiffs to deliver an airplane free of vices or defects. The evidence presented at trial, particularly the extensive repair records of the airplane and the testimony of the expert witnesses, convinces us that defendants breached the duty owed to plaintiffs. The defects in the plane MDSI purchased were the same defects which caused the plane to crash. Clearly, the prevention of accidents like the one in this case is a primary reason for the legal duty imposed on defendants. Accordingly, we find Piper, Avco, and Louisiana Aircraft liable in solido for the damages suffered by plaintiffs.
Defendants assert that if this court should find them liable, we should apply comparative fault principles to determine whether Jack Mergen was contributorily negligent. Contributory negligence has been defined by this court in Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720, 722 (La.App. 1st Cir.1983), as follows:
Contributory negligence is conduct on the part of a plaintiff which falls below the standard to which he should conform for his own protection. [This standard] is that of a reasonable man under like circumstances. Failure to take every precaution against every foreseeable risk or to use extraordinary skill, caution, and foresight, does not constitute negligence or contributory negligence. The alleged victim is required only to use reasonable precautions and his conduct in this regard is not negligent if, by a common sense test, it is in accord with that of reasonably prudent persons faced with similar conditions and circumstances.
The evidence at trial supports a finding that Jack Mergen was at fault also.
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985). The factors to be considered are (1) Whether the conduct resulted from inadvertence or involved unawareness of the danger; (2) How great a risk was created by the conduct; (3) The significance of what was sought by the conduct; (4) The capacities of the actor, whether superior or inferior; and (5) Any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
In the instant case, Jack Mergen took off in zero visibility and without radio contact or radar guidance because the tower *1354 was closed. He had been warned earlier that the plane was making a strange noise. There is no evidence that Jack was on anything but a routine business trip. As soon as he realized that his right engine was on fire, he undoubtedly tried to make an emergency landing at the airport. Due to the conditions in which he took off, he was unable to find the airport and make a safe landing before the left engine gave out too. In apportioning the percentage of fault, we take into consideration Jack's skill and experience as a pilot. Accordingly, we find that Jack Mergen was twenty percent at fault for the accident.

WRONGFUL DEATH
LSA-C.C. art. 2315.2 gives the surviving spouse and children of the deceased a right to recover the damages they suffered as a result of the wrongful death. At the time of his death, Jack Mergen was 41 years old. He had two children from his first marriage, Thomas, born in 1963, and Robert, born in 1965. He and Mary Jo Mergen were married on June 15, 1970. He proved to be an outstanding step-father to Mary Jo's child from a previous marriage, Jodi Lyn Gilcrease. Jack was employed as a pilot for MDSI and Mary Jo was employed as a registered nurse at Children's Hospital. The Mergen's marriage was shown to be an exceptionally close and loving one. Jack shared the responsibilities of caring for their home with Mary Jo.
Although his sons lived with their mother in California, Jack managed to establish a close and supportive relationship with them. Under Louisiana law, amounts recoverable in a wrongful death action for loss of care, guidance, and affection of the deceased may differ among the plaintiffs on the basis of differing degrees of affection which existed between the deceased and the different plaintiffs, or differing degrees of guidance needed by minor plaintiffs. See Cacibauda v. Gaiennie, 305 So.2d 572, 585-86 (La.App. 4th Cir.1975). Considering the facts of the present case, we award the following as general damages for the wrongful death of Jack Mergen.

Mary Jo Mergen - $350,000.00
Thomas Mergen - $100,000.00
Robert Mergen - $125,000.00

LOSS OF SUPPORT
Dr. John W. Chisolm, who was accepted as an expert economist for Mary Jo Mergen, testified that Mrs. Mergen suffered $531,980.59 in loss of support due to Mr. Mergen's death. Dr. Chisolm based this figure on the following factors: (1) Jack's salary at the time of his death and his work life expectancy of 21 years; (2) a discount rate of 8% per year based on the current Treasury bill rates; and (3) a 2.2% average annual increase in productivity. He determined that Mrs. Mergen's loss of support between the accident and the trial date was $119,925.00. He calculated the present value of her future lost support to be $412,055.59. There was a dispute between the economic expert witnesses as to how much of a discount for personal use should be used because Mr. Mergen received some additional money from his employer for his expenses. Defendant's expert, Dr. Kenneth J. Boudreaux, testified that the personal use factor ranged from 19% to 34%. Dr. Chisolm did not utilize any personal use discount rate because he believed Mr. Mergen received an additional $250.00 each month from MDSI to cover his personal expenses. We find that a 20% personal use discount rate is appropriate based on the facts in this case. Accordingly, we reduce Dr. Chisolm's figures by a 20% personal use factor to find that Mrs. Mergen proved to a reasonable certainty that she suffered $425,584.47 in total lost support. See Thomas v. State Farm Ins. Co., 499 So.2d 562 (La.App. 2d Cir.1986), cert. denied, 501 So.2d 213, 215 (La.1987).

REDHIBITION
MDSI contends that the aircraft suffered from redhibitory defects sufficient to enable it to annul the sale. We agree. It is clear that Piper sold the aircraft to MDSI with defective turbo exhaust clamps, high cylinder head temperatures, and high manifold pressures. The clamps caused a fire in both the right and left engines. These fires in turn caused severe *1355 environmental exposure to the parts of the engine housed within the engine nacelle. The defects existing in the plane at the time it was purchased by MDSI eventually caused detonation, premature aging, and heat damage in both engines. LSA-C.C. art. 2520 states that:

Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
We find that the defects in the Piper aircraft in question rendered its use so inconvenient that MDSI would not have purchased it had the vices been known. See Rey v. Cuccia, 298 So.2d 840 (La.1974). While defendants allege this redhibition action is prescribed under LSA-C.C. art. 2534, the evidence shows that suit was filed within one year of the last repairs attempted by the seller. Accordingly, we rescind the sale of the airplane by Louisiana Aircraft to MDSI and order its purchase price returned, in addition to reasonable attorneys fees and interest from the date of judicial demand until paid.

THE JONES' CLAIM
After a careful review of the record, we find the trial court did not err in awarding Mr. and Mrs. Jones nominal damages for their mental anguish. We also find that the trial court adequately compensated Mary Helen Jones for the physical damage to her property.

INTERVENTION
Hartford Accident and Indemnity Company paid survivor's benefits under Louisiana Worker's Compensation Laws to Mary Jo Mergen and Jodi Lynn Gilcrease pursuant to its obligation under a policy of worker's compensation insurance issued by it to Moore Data Systems, Inc. It intervened claiming recovery for the amount of compensation benefits paid to the date of trial, along with a credit on future payments to be calculated from the recovery had by plaintiff in the wrongful death suit. All parties stipulated that Hartford has paid Mary Jo Mergen and Jodi Lyn Gilcrease weekly benefits totaling $38,536.00 and $3,000.00 in funeral expenses for a total of $41,536.00. Hartford has continued to pay weekly indemnity benefits to Mary Jo and Jodi at the rate of $204.00 per week. We remand this case for the trial court to determine the amount Hartford paid to Mrs. Mergen for which it is entitled to recover.

DECREE
For the reasons assigned, the judgment appealed is reversed in part and affirmed in part to reflect the following awards:
I. To Mary Jo Mergen, individually: (1) wrongful death of husband, Jack Mergen, $350,000.00; (2) economic loss of past earnings, $95,940.00; (3) economic loss of future earnings, $329,644.47; TOTAL: $775,584.47. Subject to a 20% reduction for contributory negligence of decedent.
II. To Robert Mergen: wrongful death of father, $125,000.00. Subject to 20% reduction for contributory negligence of decedent.
III. To Thomas Mergen: wrongful death of father, $100,000.00. Subject to 20% reduction for contributory negligence of decedent.
IV. To MDSI: purchase price of airplane, $483,130.00, reasonable attorneys fees to be determined by the trial court, and legal interest from the date of judicial demand until paid. United States Aviation Underwriters, Inc., the insurer of the airplane, is entitled to recover the amount it paid to MDSI.
V. Hartford Accident & Indemnity Co., is entitled to recover the survivor's benefits it paid to Mary Jo Mergen out of the award she received for the wrongful death of her husband.
VI. The Jones' awards are affirmed. The Bendix settlement is to be distributed ratably among the prevailing parties. Defendants are liable in solido for any part of the Jones' *1356 claims not satisfied by the Bendix settlement.
All costs of this appeal are assessed against Piper, Avco, and Louisiana Aircraft.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED.