625 So.2d 683 (1993)
Audrey D. FAUCHEAUX, Individually and as Administratrix of the Succession of Clay J. Faucheaux, and for and in Behalf of Her Children, Clay A., Eric J. and Neal J. Faucheaux
v.
TERREBONNE PARISH CONSOLIDATED GOVERNMENT, et al.
No. 91 CA 0004R.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
Johnny X. Allemand, Thibodaux, Eldon E. Fallon, New Orleans, for plaintiffs and appellantsAudrey Faucheaux et al.
Robert A. Chaisson, Destrehan, for plaintiff in reconvention and appellantBernard Faucheaux.
C. Berwick Duval, II, Houma, for defendants and appelleesTerrebonne Parish Consol. Government et al.
*684 Before EDWARDS, CRAIN and LeBLANC, JJ.
CRAIN, Judge.
In a previous opinion, Faucheaux v. Terrebonne Consolidated Government, 597 So.2d 503 (La.App.1st Cir.1992), we affirmed the trial court judgment in favor of defendants. The Supreme Court granted writs, reversed, apportioned fault at 60% to the parish and 40% to Mr. Faucheaux, and remanded to this court to determine damages. 615 So.2d 289 (La.1993).
Defendants contend that Faucheaux had a debilitating pre-existing heart condition that would have significantly cut short his expected life span to approximately two years. Thus, damages should be awarded based on this prognosis. Plaintiffs contend damages should be awarded based on a work-life expectancy of 10 years.
The decedent, Clay Faucheaux, was 53 years old at the time of his death in September, 1985. He died of a heart attack caused by the mental and physical stress of a boating accident.
It is undisputed that Mr. Faucheaux had suffered a major heart attack in 1974 which caused significant muscle damage and complications. Mr. Faucheaux was treated by Dr. Carolyn Hebert, a cardiologist, at the time of the initial heart attack, and on a regular basis thereafter. He suffered no acute episodes and appeared to be asymptomatic after the initial heart attack until June, 1985, when he began experiencing weakness, discomfort, lightheadedness and cold sweats. He had 2 or 3 such episodes. An EKG suggested ischemia (lack of circulation to the undamaged part of the heart).
Dr. Hebert treated Mr. Faucheaux for this condition and referred him to Dr. Rajendra Dhurandhar, a cardiologist. Pursuant to Dr. Dhurandhar's orders a coronary angiogram and heart catheterization were performed. The findings were: a large scar from the previous heart attack; a 50% narrowing of the right coronary artery; and coronary artery spasm (sudden transient closure of the right coronary artery when the artery wall is irritated with dye). Dr. Dhurandhar did not recommend bypass surgery.
In Dr. Hebert's opinion the catheterization report offered a better prognosis for Mr. Faucheaux than Dr. Hebert had previously feared, because the remaining blood vessels were not damaged or narrowed through disease or aging. She remained concerned about his predisposition to coronary artery spasms primarily caused by mental stress. Mr. Faucheaux appeared to tolerate physical stress fairly well. Dr. Hebert further stated there is no treatment for the prevention of coronary artery spasmsother than to avoid stress. Dr. Hebert last saw Mr. Faucheaux on September 13, 1985. On that date Mr. Faucheaux complained of different symptoms than in the past. However, an EKG was performed that showed no acute changes.
When queried about how long Mr. Faucheaux would have lived but for the accident, Dr. Hebert stated that prognostic values are unreliable for individuals. Mr. Faucheaux had already "beaten the odds" by surviving over 10 years past the initial heart attack. She refused to give a prognosis in numbers of years. When pressed for numbers she stated that based on his medical history, including the changes in his condition detected in the summer of 1985, he probably had a life expectancy of ten years or less from the summer of 1985. He and his family would be lucky if he lived ten more years.
Dr. Dhurandhar testified by deposition that the findings from the diagnostic studies performed in 1985 indicated no additional heart damage to that of 1974. The recent episodes were probably the result of a subtotal occlusion in the left anterior descending artery of the heart which had reconstituted (spontaneously opened) due to Dr. Hebert's injection of streptokinase, which prevented new damage. The remaining vessels were essentially free of disease. His subsequent EKG showed no new damage.
When asked about Mr. Faucheaux's prognosis in June, 1985, Dr. Dhurandhar stated *685 that heart disease is unpredictable in a given patient and thus the statistics found in the literature do not always apply; Mr. Faucheaux faced a yearly mortality rate between 5% to 8% per year; and Mr. Faucheaux had a 50% chance of being alive in 10 years.
After careful consideration of the evidence we find that it is reasonable to conclude that Mr. Faucheaux would have worked for ten more years and we will award damages for loss of support based on such. Having reached that conclusion, we award damages based on the uncontradicted evidence presented by plaintiffs' expert economist which was also based on a 10 year work life expectancy and which we find to be reasonable. The decedent had been married to Audrey Faucheaux for twenty-seven years. There were three children born of the marriage. Clay was born in 1959, resided on his own and was self-supporting at the time of his father's death. Eric was born in 1963; had lived at home while attending college for a few years; was being supported by his parents while attending college; and had recently transferred to another college which required his residing away from home at the time of his father's death. Neal was born in 1967 and was still attending high school at the time of his father's death.
Mr. Faucheaux had been employed at South Central Bell for 34 years. His gross yearly salary was $44,800. The survivor's pension received by Mrs. Faucheaux as calculated by the employer is based on the assumption that Mr. Faucheaux would have elected to retire on the date after death. The amount to which he would have been entitled is reduced by 10%. The surviving spouse receives ½ of the reduced amount for life. The loss of fringe benefits received by Mr. Faucheaux were the employer's contribution to a medical, dental and vision plan, a management savings plan and accrued interest therein, and an employee stock ownership plan.
The figures submitted by the economist itemize past and future loss of economic support as follows:

Past Loss of Economic Support
 Wages $ 262,124.00
 Employer Contribution to: medical/dental/vision
 plan $ 18,831.16
 Savings plan and accrued interest $ 13,225.75
 Employees stock ownership plan $ 1,294.88
Less: Personal maintenance expenditures $ -46,781.31
 __________
 Net Past Loss $ 248,694.48
Prospective Loss of Economic Support
 Wages $ 312,822.13
 Employer Contribution to: medical/dental/vision
 plan $ 23,973.61
 Savings plan and accrued interest $ 21,072.33
 Retirement (pension plan) $ 8,426.94
Less: Personal maintenance expenditures $ -87,007.37
 ----------
 Net Prospective Loss $ 279,287.64
Total Past and Prospective net loss $ 527,982.12

We award the sum of $527,982.12 for loss of support among the surviving spouse and children as follows:

Eric - $ 20,000
Neal - $ 40,000
Audrey - $467,982.12

We also award the sums of $3,046.48 in funeral expenses and $5,000 to the surviving spouse for loss of services.

GENERAL DAMAGES
Under La.C.C. art. 2315.2 plaintiffs may recover damages for loss of love and affection. These amounts may differ among the plaintiffs for differing degrees of guidance needed by the deceased's children. Mergen v. Piper Aircraft Corp., 524 So.2d 1348 (La.App. 1st Cir.), writs denied, 532 So.2d 154, 155, 156 (La.1988).
It is uncontradicted that the three children and their father were very close. It is also uncontradicted that Mrs. Audrey Faucheaux and her husband were married in 1958 and had a very close and loving relationship. Based on these above factors, we award the following in general damages for the wrongful death of Mr. Faucheaux:

Audrey Faucheaux - $300,000
Neal Faucheaux - $120,000
Eric Faucheaux - $110,000
Clay Faucheaux - $100,000

DECREE
For the reasons assigned we award the following:

*686
 Audrey Faucheaux
 $467,982.12 - loss of support
 300,000.00 - loss of love and affection
 3,046.48 - funeral expenses
 5,000.00 - loss of services
 ___________
Total $776,028.60 × 60% = $465,617.16
 ___________
Legal interest will run on $465,617.16 from date of judicial
demand until paid in accordance with La.R.S. 13:5112(C).
 Neal Faucheaux
 $ 40,000.00 - loss of support
 120,000.00 - loss of love and affection
 -----------
Total $160,000.00 × 60% = $96,000.00
 ----------
Legal interest will run on $96,000.00 from date of judicial
demand until paid in accordance with La.R.S. 13:5112(C).
 Eric Faucheaux
 $ 20,000.00 - loss of support
 110,000.00 - loss of love and affection
 -----------
Total $130,000.00 × 60% = $78,000.00
 ----------
Legal interest will run on $78,000.00 from date of judicial
demand until paid in accordance with La.R.S. 13:5112(C).
 Clay Faucheaux
 $100,000.00 - loss of love and affection
 $100,000.00 × 60% = $60,000.00
 ----------
Legal interest will run on $60,000 from date of judicial demand
until paid in accordance with La.R.S. 13:5112(C).

Insofar as Bernard Faucheaux is concerned, we find no proof of any recoverable damages on his part.
Defendant is cast with costs of this proceeding totaling the sum of $3,502.62.
RENDERED.
LeBLANC, J., affirms in part and dissents in part and assigns reasons.
LeBLANC, Judge, dissenting.
I dissent from that portion of the majority opinion concluding that Mr. Faucheaux would have continued working for ten years, and finding that plaintiffs suffered a loss of support in the amount of $527,982.12, based on that conclusion. In determining the loss of economic support sustained by plaintiffs, it was incumbent upon this court to consider the medical evidence regarding Mr. Faucheaux's pre-existing heart condition, as well as the testimony of plaintiffs' economist. The medical evidence raised serious questions as to whether Mr. Faucheaux would have even survived for ten years. Considering the medical evidence, it was not reasonable to conclude that he would have continued working for that period of time. Consequently, I believe the award made by the majority for loss of economic support, which is based on the assumption that Mr. Faucheaux had a ten year worklife expectancy, is excessive.
Additionally, I dissent from that portion of the majority opinion assessing Mrs. Audrey Faucheaux's general damages at $300,000.00, believing that amount to be excessive.
*687 I concur in the result reached by the majority in all other respects.