I,WILLIAMS, Judge.
The Louisiana Patients’ Compensation Fund (“PCF”), as intervenor, appeals the trial court’s judgment notwithstanding the verdict (JNOV), which increased the jury’s damage awards in favor of the decedent’s surviving spouse and two adult sons. For the following reasons, we affirm.
FACTS
On March 22, 1997, Gordon Hogue visited the emergency room at North Monroe Hospital with a complaint of severe chest pain. Hogue was treated by Dr. Randy Sussmane-Stubbs (“Dr.Stubbs”) and released. Hogue was transported to the hospital under full cardiac arrest early in the morning of March 24, 1997, and was pronounced dead at 2:28 a.m. The plaintiffs, Hogue’s surviving wife, Mary Louise Hogue and their two adult sons, Russell Hogue and David Hogue, filed a petition for damages against the defendants, Dr. Stubbs and his insurer, Western Indemnity Insurance Company. Plaintiffs alleged that the defendant had failed to properly diagnose the decedent’s heart condition.
After a trial, the jury returned a verdict finding that the acts of both Dr. Stubbs and Hogue contributed to his death. The jury assessed 48% fault to the physician and 52% fault to Hogue. The jury awarded the following damages:
Loss of companionship, love and affection, and mental anguish
*1205 Mary L. Hogue $81,250
Russell Hogue $17,000
David Hogue $17,000
Loss of Support for Mary Hogue $135,000
Funeral Expenses 0
The plaintiffs filed a motion for additur or JNOV. After a hearing, the trial court granted JNOV to increase certain damage awards. The court increased the awards to Russell and David to $100,000 each for loss of love and affection, and 1 ¡¡mental anguish. The court also increased Mary Hogue’s award to $250,000 for loss of support. Subsequently, the plaintiffs filed a petition against the Louisiana Patients’ Compensation Fund seeking payment of all damages in excess of $100,000. The PCF intervened in the action to appeal the judgment.
DISCUSSION

Award to Sons of the Decedent

The intervenor contends the trial court erred in granting a JNOV to increase the jury’s awards to the decedent’s sons for loss of affection. PCF argues that the jury made reasonable inferences in awarding $17,000 to each son.
Motions for JNOV are governed by LSA-C.C.P. art. 1811. A JNOV is warranted when the facts and inferences point so strongly in favor of one party that the court believes reasonable persons could not arrive at a contrary verdict, not merely when there is a preponderance of evidence for the mover. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991); May v. Jones, 28,106 (La. App.2d Cir.5/8/96), 675 So.2d 275. A motion for JNOV raises the question of whether the jury verdict is supported by any legitimate or substantial evidence. In making its determination, the trial court does not have the discretion to weigh the evidence, evaluate the credibility of witnesses or to substitute its judgment for that of the jury. Matthews v. Arkla Lubricants Inc., 32,121 (La.App.2d Cir.8/18/99), 740 So.2d 787. The court should consider the evidence in the light most favorable to the prevailing party, who should be given the benefit of every reasonable inference of fact. May, supra.
In the present case, the testimony demonstrated that Hogue enjoyed a close relationship with his sons during their childhood and as adults. Mary Hogue testified that her husband was active with each child’s school activities and that after their sons had moved out of the house, they continued to take annual vacations together as a family. She stated that after Hogue suffered his heart | ¡¡attack, Russell helped her move his father from the bed onto the floor in an effort to revive him as instructed by emergency medical personnel.
Russell Hogue, who was over 30 years old and owned his own house when Hogue died, testified that his father was very involved with his school and extracurricular activities, assisting him with homework and Cub Scout projects. Russell stated that when he was in the high school band, his father attended all of the local band performances, drove to the out-of-town games where the band played and eventually became president of the band parents’ group. Russell testified that his father advised him in the selection of his home and helped perform renovations to the house. Russell stated that he and his father enjoyed getting together occasionally to watch a movie and that he will no longer be able to learn from his father.
The record shows that David Hogue was married and working in Gulfport, Mississippi at the time of his father’s death. David testified that his parents paid for his education, and that his father sold their motor home to pay for his law school tuition. David stated that his father supported his school activities and provided an example of religious faith to his children. David testified that after he began working as an attorney, he experienced a more mature relationship with his father on an adult level. David stated that while living out of state, he discussed work stress and family issues with his father over the tele *1206 phone. David described his father as a teacher and a person who sacrificed for his son. More than one year after Hogue’s death, David was given a psychiatric evaluation. After an interview, Dr. Karen Young, a psychiatrist, diagnosed David as having stress from moderate unresolved grief over the loss of his father.
After reviewing the record and considering the evidence in the light most favorable to PCF, we must conclude the trial court correctly found that the jury’s awards to Hogue’s sons for loss of affection were abusively low. Consequently, |4the trial court did not err in granting the JNOV to increase the awards. In modifying the jury’s damage award, the trial court does not sit as an appellate court. Rather, the trial court’s assessment of damages is an independent determination. Jackson v. A.L. & W. Moore Trucking, 609 So.2d 1064 (La.App. 2d Cir.1992).
Before the trial court’s damage award may be disturbed, the record must clearly show that the factfinder abused its broad discretion in making the award. Jackson, supra. The finding of an abuse of much discretion must be based on the particular injuries sustained and their effect on the particular injured person. After a determination that an award is an abuse of discretion, the appellate court may lower an excessive award to the highest amount or raise an inadequate award to the lowest point reasonably within the factfinder’s discretion. Jackson, supra.
Based upon the particular facts of this case and the jurisprudence, we cannot say the trial court abused its discretion in awarding Russell and David Hogue damages for loss of affection in the amount of $100,000 each. See Gordon v. Willis Knighton, 27,044 (La.App.2d Cir.6/21/95), 661 So.2d 991, writ denied, 95-2776 (La.1/26/96), 666 So.2d 679; Faucheaux v. Terrebonne Parish, 625 So.2d 683 (La.App. 1st Cir.1993). The PCF’s argument lacks merit.

Loss of Support Award

PCF contends the trial court erred in increasing the jury’s award to Mary Hogue for loss of support. Factors which should be considered when determining an amount to award for loss of support include the decedent’s earnings at the time of death, his age and life expectancy, job security, the nature of his work, the decedent’s health prior to his death and his work history. Masters v. Courtesy Ford Co. Inc., 32,275 (La.App. 2d Cir.4/11/00), 758 So.2d 171.
In the present case, the plaintiffs presented testimony by Ernest Moser, Ph. D., who was accepted as an expert economist. To calculate past lost income for | Rthe period from the date of death until trial, Moser used Hogue’s 1996 gross earnings of $69,552, reduced by 35% for “personal consumption,” as the income loss figure per year. Moser calculated the lost past income figure as $88,609, and added the amount of $5,168 as the estimated value of Hogue’s household services.
In estimating Hogue’s future loss of income, Moser used the “Work Life Expectancy Table” issued by the U.S. Department of Labor. Moser testified that according to the Table, Hogue’s work expectancy would be approximately six years from the date of trial in March 1999. Based on the above stated 1996 gross income, reduced for personal consumption and adjusted for inflation, Mos-er calculated the amount of Hogue’s discounted future lost income as $253,085.
In its brief, PCF argues that the jury’s award of $135,000 for loss of support was reasonable based on evidence that the decedent-had been a smoker with existing heart disease. However, Dr. Todd Thoma, who was accepted as an expert in emergency medicine, testified that Hogue did not have a history of prior heart problems and that despite the triple vessel coronary disease discovered in the autopsy, Hogue’s heart muscle was still strong. Dr. Thoma opined that as a result, Hogue’s opportunity for survival was above average and that he would have done very well in recovery. Thus, even if the jury did not accept Mos-er’s estimated amounts for the value of *1207 Hogue’s fringe benefits or his household services, the medical evidence presented does not support an inference that Hogue would have been unable to work for the expected period of six years if he had received the proper diagnosis and treatment.
The evidence showed that Hogue worked for the same employer for a lengthy period and that his salary steadily increased during the three years preceding his death. In addition, testimony demonstrated that prior to his heart attack, Ho-gue was physically active caring for his own house and assisting with repairs of his son’s residence.
|fiAfter reviewing the record, we must conclude that the trial court did not err in finding that the jury’s loss of support award was unreasonably low and in granting the JNOV to increase the amount. Based upon the particular facts of this case and the evidence presented, we cannot say the trial court abused its discretion in awarding Mary Hogue loss of support damages of $250,000. The assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the trial court’s judgment granting the motion for JNOV and awarding $100,000 to each of the decedent’s sons for loss of their father’s affection and $250,000 to Mary Ho-gue for loss of support, is affirmed. Costs of this appeal are assessed to the appellant, Louisiana Patients’ Compensation Fund.
AFFIRMED.
KOSTELKA,, J., dissents with written reasons.