609 So.2d 1064 (1992)
Purvis JACKSON, et al., Plaintiff-Appellant,
v.
A.L. & W. MOORE TRUCKING, Defendant-Appellant.
No. 24207-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1992.
*1067 William D. Hall, Shreveport, for plaintiff-appellant.
Bodenheimer, Jones, Klotz & Simmons by G.M. Bodenheimer, Shreveport, for defendant-appellant.
Cook, Yancey, King & Galloway by Kenneth Mascagni, Shreveport, for Progressive American Ins. Co.
Before LINDSAY, HIGHTOWER and VICTORY, JJ.
LINDSAY, Judge.
This case arises from an intersectional collision involving an automobile driven by Wilson Jackson and an 18-wheeler, owned by A.L. & W. Moore Trucking and driven by its employee, Jackie G. Curtis. Mr. Jackson died as a result of his injuries. His wife, Hattie, a passenger in the vehicle, was severely injured. Mrs. Jackson and the couple's surviving children asserted a survival action against Moore Trucking Co., Inc., Jackie Curtis and Clarendon Insurance Company, as well as claims for personal injury and wrongful death.
*1068 The case was tried before a jury which arrived at answers to interrogatories which were not consistent. The trial court granted a judgment notwithstanding the verdict (JNOV), and found that both Jackie Curtis and Wilson Jackson were at fault in causing the accident, assessing fault at 80 percent to Mr. Curtis and 20 percent to Mr. Jackson. The court then found the amount of damages awarded by the jury was abusively low and adjusted the damage awards.
All parties have appealed or answered the appeal. For the following reasons, we affirm in part, amend in part, and reverse in part the trial court judgment.

FACTS
The accident occurred at the intersection of U.S. Highway 80 and La. Highway 531, in Webster Parish, on the morning of November 16, 1989. Involved were Mr. Wilson Jackson and his wife, Hattie, who were traveling west on Highway 80, and Jackie Curtis who was traveling north on La. 531.
At this point, Highway 80 is a two-lane highway running east and west. La. 531 is a two-lane road running north and south. Traffic at the intersection is controlled by flashing yellow and red lights. Traffic on Highway 80 is favored. There is a flashing yellow light for east and west bound traffic on Highway 80. Traffic on La. 531 is not favored. There is a stop sign and a flashing red light at the intersection, directing traffic traveling north and south on La. 531 to stop and yield to traffic on Highway 80.
Jackie Curtis was driving an 18-wheeler, owned by Moore Trucking, northbound on La. 531. Mr. Curtis stopped his vehicle at the stop sign and was looking across the intersection at a vehicle headed southbound on La. 531, driven by Susan Williams. Ms. Williams' vehicle was stopped at the stop sign. She signaled that she was about to make a left turn onto Highway 80, but she motioned to Mr. Curtis to proceed through the intersection before she made her turn.
Although the evidence is somewhat conflicting, it appears that Mr. Curtis proceeded to move through the intersection without checking for traffic proceeding on Highway 80. Mr. Curtis never saw the Jackson vehicle approaching from his right. Mr. Curtis broadsided the Jackson vehicle in the intersection.
Mr. Jackson sustained massive head injuries, including a fractured skull. However, he remained conscious and alert. Hattie Jackson sustained several broken ribs and a punctured lung. They were taken to a hospital in Minden where Mrs. Jackson was hospitalized. Due to the seriousness of Mr. Jackson's injuries, he was transferred to a hospital in Shreveport. The next day he died from his injuries.
Mr. Jackson was 90 years old at the time of the accident, but was in good health and very active. He was still working part-time collecting insurance premiums and was employed in this endeavor at the time of the accident. Mr. and Mrs. Jackson had been married for 66 years and had seven children.
Hattie Jackson and her seven children filed suit against A.L. & W. Moore Trucking, its insurer, Clarendon Insurance Company, and Moore's driver, Jackie Curtis. Mrs. Jackson claimed damages for her personal injuries, for pain and suffering and for medical expenses. She and her children claimed damages pursuant to a survival action for Wilson Jackson and sought damages for his wrongful death.
A.L. & W. Moore Trucking, Clarendon Insurance Company, and Jackie Curtis filed a third party demand for damages against the succession of Wilson Jackson and his insurer, Progressive American Insurance Company. The defendants claimed that Mr. Jackson was negligent in operating his vehicle while he had a heart condition and in failing to brake or take other evasive action to avoid the collision.
Progressive American Insurance Company filed a counterclaim against Moore Trucking, Clarendon Insurance Company and Curtis to recover the $7,750 paid to Mrs. Jackson under its insurance policy for damage to the Jackson vehicle.
A jury trial was held. Following the close of all the evidence, interrogatories were propounded to the jury. The jury *1069 was obviously confused by the interrogatories and returned conflicting responses. The jury found that the truck driver, Jackie Curtis, was at fault in the accident, but that his fault was not a legal cause of the accident. The jury then found that Jackie Curtis' degree of fault was 51 percent.
As to Wilson Jackson, the jury found that he was also at fault. However, the jury then found that his fault was not the legal cause of the accident. No degree of fault was assessed to Mr. Jackson.
The jury then went on to award damages. Hattie Jackson was awarded $15,000 for her injuries and her pain and suffering, plus $5,000 for mental anguish, $5,000 for future medical expenses and $18,000 for loss of consortium. She was denied damages for past medical expenses, even though this item had been proven and the amount was not contested.
Hattie Jackson and her seven children were awarded $1,700 on the survival action for the pain and suffering of Wilson Jackson prior to his death. For his medical expenses, $2,000 was awarded, plus $2,300 for funeral expenses. Each of the seven children was awarded $10,000 for the loss of their father.
The trial court interpreted the jury's ambiguous verdict to indicate that the defendants were not liable. Accordingly, the trial court signed a judgment on November 5, 1991, rejecting the plaintiffs' demands.
The plaintiffs then filed a motion for judgment notwithstanding the verdict (JNOV), claiming that the jury erroneously concluded that Jackie Curtis' actions were not a legal cause of the accident and that the amount of damages awarded was abusively low. Progressive American Insurance also filed a motion for JNOV. Progressive American also claimed that the jury erred in finding that the action of Jackie Curtis was not a legal cause of the accident and that the jury's decision was one which reasonable men could not have reached.
On January 24, 1992, the trial court signed a judgment granting the motions for JNOV as to both causation and damages. In written reasons, the court noted that the jury found that both Jackie Curtis and Wilson Jackson were negligent, yet their negligence was not the legal cause of the accident. The court reasoned that this finding was clearly wrong and stated that, but for the actions of Jackie Curtis in driving from the stop sign into the path of an oncoming car, the accident would not have happened. However, the trial court concurred in that portion of the jury verdict that found both Mr. Curtis and Mr. Jackson to be at fault.
The court further reasoned that the jury's failure to correctly decide issues of fault and causation resulted in its misapplication of the law of comparative fault. The trial court then assessed fault at 80 percent to Jackie Curtis and 20 percent to Wilson Jackson.
The court found that the jury also erred in its award of damages. The court reassessed the amount of damages and made the following awards:

(a) Plaintiff HATTIE JACKSON, individually, for:
 Her Pain and Suffering $100,000.00
 Her Mental Anguish 20,000.00
 Her Past Medical Expenses 17,749.03
 Her Future Medical Expenses 31,491.60
 Loss of her husband Wilson Jackson, and his love, support,
 affection, consortium, service, and society 50,000.00
(b) Plaintiffs HATTIE JACKSON, PURVIS JACKSON, CALIP C.
 JACKSON, THERON JACKSON ANNIE JACKSON SIMS,
 GEORGIA JACKSON BROWN, LILLIE JACKSON WILSON
 and THERESA JACKSON GILLIAM for the survival
 action for the pain and suffering of Wilson Jackson prior to
 death 15,000.00
(c) Plaintiffs HATTIE JACKSON, PURVIS JACKSON, CALIP C.
 JACKSON, THERON JACKSON, ANNIE SIMS JACKSON,

*1070
 GEORGIA JACKSON BROWN, LILLIE JACKSON WILSON,
 and THERESA JACKSON GILLIAM for damages resulting
 from the wrongful death of Wilson Jackson
 Medical Expenses incurred by Wilson Jackson prior to death $11,718.69
 Funeral Expenses 2,300.00
(d) Plaintiff PURVIS JACKSON
 Loss of father's love, affection, consortium, service and society. 25,000.00
(e) Plaintiff CALIP P. JACKSON
 Loss of father's love, affection, consortium, service and society. 25,000.00
(f) Plaintiff THERON JACKSON
 Loss of father's love, affection, consortium, service and society. 25,000.00
(g) Plaintiff ANNIE JACKSON SIMS
 Loss of father's love, affection, consortium, service and society. 25,000.00
(h) Plaintiff GEORGIA JACKSON BROWN
 Loss of father's love, affection, consortium, service and society. 25,000.00
(i) Plaintiff THERESA JACKSON GILLIAM
 Loss of father's love, affection, consortium, service and society. 25,000.00
(j) Plaintiff LILLIE JACKSON WILSON
 Loss of father's love, affection, consortium, service and society. 25,000.00
 ___________
TOTAL..................................................................$423,259.32

The trial court awarded Progressive American Insurance Company $7,750 for its property damage payment. All awards were then decreased according to the 20 percent fault assessed to Wilson Jackson.
The defendants appealed suspensively. The plaintiffs appealed devolutively. Progressive American Insurance Company answered the defendants' appeal.

JUDGMENT NOTWITHSTANDING THE VERDICT
The defendants contend that the trial court erred in granting the motion for JNOV, finding liability, assessing percentages of fault and awarding damages.[1] The defendants argue that the trial court improperly substituted its judgment for that of the jury and failed to follow the jurisprudence which prohibits the court from weighing evidence and passing on the credibility of witnesses. The defendants also argue that the trial court failed to follow the jurisprudence which holds that a jury verdict should be given every legitimate reasonable inference that can be drawn from the evidence.
The defendants assert that there was ample basis in the testimony for the jury to conclude that the actions of Jackie Curtis were not the legal cause of the accident. They argue that eyewitnesses testified that no one saw the Jackson vehicle prior to the accident, but that Mr. Jackson had a clear view of the intersection. The defendants contend that although the expert witness testified that Jackie Curtis was at fault, expert testimony should not outweigh that of eyewitnesses. These arguments are meritless.
The jury was obviously confused in finding that, although there were only two drivers involved in the accident and both were negligent, none of their actions were a legal cause of the accident. The filing of a motion for JNOV was the proper procedure to obtain relief from such an incongruous finding.
Motions for JNOV are governed by LSA-C.C.P. Art. 1811, which provides:
A. (1) Not later than seven days, exclusive of legal holidays, after the signing *1071 of the judgment or, if notice of the signing of the judgment is required under Article 1913, not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice, a party may move for a judgment notwithstanding the verdict. If a verdict was not returned, a party may move for a judgment notwithstanding the verdict not later than seven days, exclusive of legal holidays, after the jury was discharged.
(2) A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative.
B. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict. If no verdict was returned, the court may render a judgment or order a new trial.
C. (1) If the motion for a judgment notwithstanding the verdict is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed and shall specify the grounds for granting or denying the motion for a new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment.
(2) If the motion for a new trial has been conditionally denied and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise.
(3) If the motion for a new trial has been conditionally denied and the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.
D. The party whose verdict has been set aside on a motion for a judgment notwithstanding the verdict may move for a new trial pursuant to Articles 1972 and 1973. The motion for a new trial shall be filed no later than seven days, exclusive of legal holidays, after the signing of the judgment notwithstanding the verdict or, if notice of the signing of the judgment is required under Article 1913, not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice. The motion shall be served pursuant to Articles 1976 and 1314.
E. If the motion for a judgment notwithstanding the verdict is denied, the party who prevailed on that motion may, as appellee, assert grounds entitling him to a new trial in the event the appellate court concludes that the trial court erred in denying the motion for a judgment notwithstanding the verdict. If the appellate court reverses the judgment, nothing in the Article precludes the court from determining that the appellee is entitled to a new trial or from directing the trial court to determine whether a new trial shall be granted.
F. The motion for a judgment notwithstanding the verdict may be granted on the issue of liability or on the issue of damages or on both issues.
By JNOV, the trial judge may correct a legally erroneous verdict by modifying fault and/or damages that the jury may have assessed. Zeagler v. Dillard Department Stores, Inc., 521 So.2d 766 (La.App. 2d Cir.1988); Streeter v. Sears, Roebuck & Company, Inc., 533 So.2d 54 (La.App. 3rd Cir.1988), writ denied 536 So.2d 1255 (La.1989).
The standard for granting motions for JNOV has been developed jurisprudentially. JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, not merely when there is a preponderance of evidence for the mover. Zeagler v. Dillard Department Stores, Inc., supra; Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991); Romero v. Emerson Electric Company, 583 So.2d 544 (La.App. 3rd Cir.1991), writ denied 589 So.2d 1054 (La.1991); Hardin v. Munchies Food Store, 521 So.2d 1200 (La.App. 2d Cir.1988), writ denied 523 So.2d 1321 (La.1988).
On the other hand, if there is evidence opposed to the motion which is of such quality and weight that reasonable *1072 and fair minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the nonmoving party. Anderson v. New Orleans Public Service, Inc., supra.
On motions for JNOV, the court should consider all the evidence, not just the evidence which supports the nonmover's case, but in the light and with all reasonable inferences most favorable to the party opposing the motion. Romero v. Emerson Electric Company, supra.
Simply stated, a trial court can grant a JNOV only when a jury's verdict is one which reasonable people could not have rendered; if reasonable people could have arrived at the same verdict given the evidence presented to the jury, then a JNOV is improper. Lilly v. Allstate Insurance Company, 577 So.2d 80 (La.App. 1st Cir. 1990), writ denied 578 So.2d 914 (La.1991).
In modifying the jury's damage award, the trial court does not sit as an appellate court. Zeagler v. Dillard Department Stores, Inc., supra. Its assessment of damages is an independent determination. Higley v. Kramer, 581 So.2d 273 (La.App. 1st Cir.1991), writ denied 583 So.2d 483 (La.1991).
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial court does in determining whether to grant the motion or not, i.e., do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men, in the exercise of impartial judgment, might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated. Anderson v. New Orleans Public Service, Inc., supra. With these standards in mind, we must then review the evidence presented to determine whether the trial court committed manifest error. Higley v. Kramer, supra. In reviewing a decision made on a JNOV, the appellate court applies the manifest error rule to the trial court's conclusions on quantum and liability. Lopez v. Chicago Bridge and Iron Company, 546 So.2d 291 (La.App. 3rd Cir.1989), writ denied 551 So.2d 1323 (La.1989).
In the present case, the trial court was correct in granting the plaintiffs' motion for JNOV on the issue of liability. The jury found that both Mr. Curtis and Mr. Jackson were negligent, but that the negligence of neither party was the legal cause of the accident. The jury then assessed 51 percent fault to Mr. Curtis and failed to assess fault to Mr. Jackson. Mr. Curtis and Mr. Jackson were the only two drivers involved in the collision. Under the circumstances of this case, no jury could reasonably find that both drivers were negligent but that neither was the legal cause of the accident. We, therefore, reject the defendants' contentions that the trial court was in error in granting plaintiffs' motion for JNOV. The defendants' driver, Mr. Curtis, was at fault in causing the accident, as will be more fully discussed hereafter, and his fault was clearly a legal cause of the accident. Further, because the jury erred in its finding of causation, it also failed to properly assess percentages of fault, which required modification by JNOV.
We also find that the trial court correctly granted the plaintiffs' motion for JNOV as to damages. The jury failed to make awards for some elements of damages which were proven at trial and made abusively low awards for other amounts. The jury erroneously failed to make an award for Hattie Jackson's past medical expenses and awarded only $5,000 for future medical expenses, even though evidence established these amounts of damages at trial and the amounts were not contested. Also, the jury awarded only *1073 $5,000 for Wilson Jackson's medical expenses before death, even though it was shown at trial that this amount totaled $11,718.69 and this amount was also not contested.
The jury awarded $15,000 for Hattie Jackson's pain and suffering, $5,000 for her mental anguish, $18,000 for loss of consortium, and $1,700 for Wilson Jackson's pain and suffering before his death. The jury awarded $10,000 to each of the Jackson's seven children. The trial court correctly found that these awards were abusively low. Therefore, applying the standards set forth above, the trial court was correct in granting the JNOV on the question of damages and modifying the amounts to be awarded.

ASSESSMENT OF FAULT
The plaintiffs and Progressive American Insurance Company, the insurer of Wilson Jackson, argue that the trial court erred in finding that Mr. Jackson was 20 percent at fault in causing the accident. They argue that the negligence of the defendant, Jackie Curtis, was the sole cause of the accident. We find this argument has merit and reverse the trial court judgment on the issue of fault.
In reviewing a decision made on a JNOV, the appellate court applies the manifest error rule to the trial court's conclusions on quantum and liability. Lopez v. Chicago Bridge and Iron Company, supra.
Findings of respective percentages of fault are factual findings. Appellate courts will not disturb such findings unless, for well articulated reasons, those findings are found to be clearly wrong and manifestly erroneous. Whether a fact finder determines a party to be one percent at fault, totally at fault, or somewhere in between, the manifest error rule applies. Towns v. Georgia Casualty and Surety Company, 459 So.2d 124 (La.App. 2d Cir. 1984).
The apportionment of fault is guided by principles enunciated in Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967 (La.1985). In Watson, supra, the court stated that, in determining percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and damages claimed. In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, and (5) any extenuating circumstances which might require the actor to proceed in haste without proper thought.
In this case, Mr. Jackson was traveling on the favored highway and was faced with a flashing yellow light. Mr. Curtis was on a nonfavored highway and was faced with a stop sign and a flashing red light. LSA-R.S. 32:234 deals with the duties of motorists faced with flashing red and yellow lights. This statute provides, in pertinent part:
A. Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal, it shall require obedience by vehicular traffic as follows:
(1) FLASHING RED (STOP SIGNAL)When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest cross-walk at an intersection or at a limit line when marked, or, if none, then before entering the intersection, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.
(2) FLASHING YELLOW OR AMBER (CAUTION SIGNAL)When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through or past such signal only with caution.
A motorist approaching a flashing yellow light must exercise a greater degree of care and vigilance than one approaching a green light or an uncontrolled crossing. Fruge v. State, Department of Transportation and Development, 536 So.2d 745 *1074 (La.App. 3rd Cir.1988), writ denied 538 So.2d 593 (La.1989).
A driver facing a flashing yellow or amber signal has the right-of-way and the right to assume that vehicles on the inferior street will honor the right of way. A motorist approaching a flashing yellow light is within reason to expect that a motorist who has stopped in compliance with the flashing red light will remain stopped until certain that it is safe to enter the intersection. Tucker v. Lirette, 400 So.2d 647 (La.1981). The driver on the favored street can proceed under this assumption until he sees or should have seen that the other vehicle will not observe the law. Touchet v. Champagne, 488 So.2d 412 (La.App. 3rd Cir.1986).
While a driver approaching a flashing yellow light may ordinarily rely on the fact that a driver approaching a flashing red light will stop before entering the intersection as required by law, the driver approaching a yellow light is under a duty to exercise caution and vigilance so that he may ascertain whether he can cross with safety. Litton v. Ford Motor Company, 554 So.2d 99 (La.App. 2d Cir.1989) writ denied 559 So.2d 1353 (La.1990); Holland v. Home Insurance Company, 396 So.2d 3 (La.App. 1st Cir.1981), writ denied 400 So.2d 1384 (La.1981).
The degree of caution required in such instances includes approaching the intersection at a reasonable speed and maintaining a proper lookout for danger. What constitutes reasonable speed and proper lookout must, of course, be determined in light of the circumstances of the individual case. Insured Lloyds v. Liberty Mutual Insurance Company, 286 So.2d 420 (La.App. 1st Cir.1973); Touchet v. Champagne, supra; Fuqua v. Aetna Casualty and Surety Company, 542 So.2d 1129 (La.App. 3rd Cir.1989), writ denied 548 So.2d 310 (La.1989).
The amber light serves as a warning to proceed with care and a motorist is guilty of negligence if he fails to take measures to avoid obvious danger. Insured Lloyds v. Liberty Mutual Insurance Company, supra.
In the present case, the plaintiffs and Progressive American Insurance Company argue that because Mr. Jackson was on the favored roadway and Mr. Curtis was stopped behind the stop sign and the flashing red light, Mr. Jackson was entitled to presume that Mr. Curtis would remain stopped. These parties argue that expert testimony showed that Mr. Jackson did not have enough time to react to avoid the accident after he observed Mr. Curtis begin to move into the intersection. We find that, based upon the evidence presented, these arguments are correct.
The plaintiff called as an expert witness Olin K. Dart, Jr. Dr. Dart has a Ph.D in engineering and is a professor of highway design and traffic engineering at Louisiana State University in Baton Rouge. Dr. Dart testified that Mr. Curtis, the driver of the truck, had an unobstructed view of the intersection and the highway, and had he looked to his right prior to pulling into the intersection, he would have seen the Jackson vehicle. Dr. Dart also testified that it would have taken Mr. Curtis only 1.4 seconds to stop his truck, thus avoiding the accident.
Dr. Dart testified that under the circumstances presented, there was nothing Mr. Jackson could have done to avoid the accident. Mr. Jackson was entitled to rely on the fact that Mr. Curtis was at a complete stop at the intersection and was entitled to rely upon this fact until Mr. Curtis broke the plane of the intersection. (The southerly line of Highway 80.) According to Dr. Dart's calculations, the Jackson vehicle was 113 feet from the intersection when Mr. Curtis began to move forward. The Jackson vehicle required 458 feet to stop. Under these facts, it is clear that, at the point Mr. Jackson became aware that Mr. Curtis was entering the intersection, he simply did not have sufficient time to stop his vehicle.
We note that the testimony of the plaintiffs' expert was uncontroverted. The defendants presented no expert testimony to establish that Mr. Jackson was at fault.
*1075 The evidence shows that when Mr. Curtis approached the intersection, he stopped at the stop sign. He looked both ways, but did not see the Jackson vehicle approaching from the east on Highway 80. There is a small hill some 539 feet east of the intersection which blocked Mr. Curtis' view of the oncoming Jackson vehicle. At that time, Mr. Curtis observed Ms. Williams' vehicle on the other side of Highway 80. She was signaling her intention to make a left turn on to Highway 80, which would have placed her vehicle in front of Mr. Curtis as he proceeded across the intersection. Obviously, concerned about Ms. Williams' vehicle, Mr. Curtis observed her for several seconds. In the meantime, Mr. Jackson's vehicle topped the hill and was proceeding toward the intersection. Mr. Jackson could then observe Mr. Curtis' truck stopped at the stop sign.
As Ms. Williams motioned to Mr. Curtis to proceed into the intersection, he did so, concentrating only on Ms. Williams and her vehicle and failing to observe Mr. Jackson's approach. As Mr. Curtis began to move forward into the intersection, Mr. Jackson could determine that Mr. Curtis was going to "run" the light. However, at the time this became apparent to Mr. Jackson, he was, according to the expert testimony of Dr. Dart, only 113 feet from the ultimate point of impact. At that time, even if he had been traveling at 35 mph, it would have been impossible for Mr. Jackson to avoid the collision.
There is nothing in the record to indicate that Mr. Jackson failed to observe his duty to proceed with caution. Mrs. Jackson testified that her husband always drove carefully. Even Ms. Williams testified that Mr. Jackson was traveling no more than 50 to 55 miles per hour. This indicates that Mr. Jackson was not exceeding the posted speed limit of 55 miles per hour and probably even decelerated approaching the intersection. Mr. Jackson was entitled to rely on the fact that Mr. Curtis was stopped at the intersection. The evidence shows that at the point where Mr. Curtis began entering the intersection, Mr. Jackson simply did not have enough time to react to avoid the accident. Further, the defendants made no showing that Mr. Jackson could have taken evasive action which would have avoided the accident.
As stated above, there is nothing to indicate that Mr. Jackson failed to proceed cautiously or otherwise breached any duty required of him. The facts of this case show that the sole cause of the accident is the negligence of Jackie Curtis in pulling into the intersection in the face of oncoming traffic.
Therefore, after reviewing the record, we determine that, although the trial court correctly found that a JNOV was required to assess the defendants with liability for the accident, nevertheless, the trial court was manifestly erroneous in finding Mr. Jackson to be partially at fault in causing the accident and in assessing his fault at 20 percent.[2] The record demonstrates that the negligence of Jackie Curtis was the sole cause of the accident. Therefore, we reverse the trial court judgment regarding the allocation of fault and assess the defendant, Jackie G. Curtis, with 100 percent fault in causing this accident.

DAMAGES
The plaintiffs argue that the trial court awards of $15,000 for Wilson Jackson's pain and suffering prior to his death, and $25,000 to each of the surviving Jackson children for the loss of their father, were excessively low.[3]
As stated earlier, in reviewing a decision made on a JNOV, the appellate court applies *1076 the manifest error rule to the trial judge's conclusions as to quantum. Lopez v. Chicago Bridge and Iron Company, supra.
Before a trial court award for damages can be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the instant case. A damage award should not be disturbed by the reviewing court absent a showing of a clear abuse of the discretion vested in the trial court. Reck v. Stevens, 373 So.2d 498 (La.1979); Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987).
It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases is proper. Reck v. Stevens, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Higginbotham v. Ouachita Parish Police Jury, supra.
The appropriate procedure for testing whether the trier of fact has abused its discretion by making an excessive award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the fact finder. The converse of this rule is also true. In determining whether the trier of fact abused its discretion in making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Higginbotham v. Ouachita Parish Police Jury, supra.
Only after finding that the lower court abused its much discretion, can the appellate court disturb the award. Then, the appellate court may only lower an excessive award to the highest point or raise an inadequate award to the lowest point which is reasonably within the discretion afforded the trial court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Thompson v. Tuggle, 486 So.2d 144 (La. App. 3rd Cir.1986), writ denied 489 So.2d 919 (La.1986).

Pain and Suffering of Wilson Jackson
The plaintiffs contend that the trial court award of $15,000 for the pain and suffering of Wilson Jackson prior to his death is excessively low. Therefore, we must view the evidence in the light most favorable to the defendant in determining whether the trial court abused its discretion in making an inadequate award. Having thus reviewed the evidence, we find that the award was so low as to constitute an abuse of discretion.
The accident occurred on the morning of November 16, 1989. Mr. Jackson suffered extensive head and facial injuries with skull fractures and massive bleeding from his nose and ears. Mr. Jackson remained conscious and was trapped in his vehicle for approximately one hour before he was freed by rescue workers using the "jaws of life." During this time, in spite of his injuries, Mr. Jackson remained conscious and was trying to count his fingers in an effort to remain alert and assess the severity of his injuries. Mrs. Jackson testified that her husband was bleeding profusely during this time. When Mr. Jackson was seen in the emergency room at the Minden Medical Center, he remained conscious and was able to communicate with the emergency room physician.
The record shows that the nature of Mr. Jackson's injuries were quite severe. Dr. George Thomas Waterfallen, the emergency room physician at Minden Medical center testified that Mr. Jackson had an obvious wound to the right forehead which appeared to be an open skull fracture. Dr. Waterfallen testified that by palpating the large laceration on the patient's head, he could feel skull fragments, damaged tissue, swelling and blood in the wound. This large laceration was ultimately packed with gauze, sutured and wrapped with bandages. Dr. Waterfallen noted that Mr. Jackson's eyes were completely swollen shut, a symptom indicating a fracture at the base of the skull. He stated that Mr. Jackson had blood in his nose and was making a gurgling noise with blood coming from the mouth and ears. Skull x-rays indicated that Mr. Jackson suffered extensive skull *1077 fractures through the frontal region. Following a CT scan at Schumpert Medical Center, the medical reports show that Mr. Jackson had "fractures of any facial bone that can be named." The report also showed that Mr. Jackson had a "fractured mandible."
Mr. Jackson was transported to a hospital in Shreveport where he died at approximately 2:00 a.m. on November 17, 1989. At 8:00 p.m. on November 16, 1989, the physician's notes show that Mr. Jackson was more responsive and localizing pain. Notes in the decedent's medical record indicate that he was at least partially conscious and responsive to pain until approximately 11:30 p.m. on November 16, 1989.
Based on these facts, it appears that the decedent consciously suffered from his massive injuries for approximately 11 hours before losing consciousness and dying at 2:00 a.m. on November 17, 1989.
Because we find that the trial court award was excessively low, we now refer to prior awards in similar cases in order to raise the award to the lowest point reasonably within the discretion of the trial court.
In Comberrel v. Basford, 550 So.2d 1356 (La.App. 5th Cir.1989), writs denied 556 So.2d 1284, 1285, 1286 (La.1990), $50,000 was awarded for the pain and suffering of a decedent who survived for one hour trapped in his vehicle with his broken legs pinned under his seat with a puncture wound to the chest with broken ribs and with severe facial and dental trauma.
In Snell v. United Parcel Service, Inc., 543 So.2d 52 (La.App. 1st Cir.1989), writ denied 545 So.2d 1040 (La.1989), the victim of an auto accident was conscious and in great pain for 35 to 45 minutes prior to death. An award of $125,000 for pain and suffering was reduced to $50,000.
In Johnson v. Georgia Casualty and Surety Company, 488 So.2d 1306 (La.App. 3rd Cir.1986), writs denied 493 So.2d 1223, 1224 (La.1986), an individual was crushed between two vehicles, suffered excruciating tearing pain, remained conscious for less than one hour and died on the way to the hospital. An award of $25,000 for pain and suffering was held not to be an abuse of discretion.
In Paige v. Commercial Union Insurance Company, 512 So.2d 507 (La.App. 3rd Cir.1987), writ denied 513 So.2d 823 (La. 1987), $50,000 was awarded for pain and suffering for a decedent who lived six hours after an accident, semiconscious and in pain.
In Estate of King v. Aetna Casualty and Surety Company, 427 So.2d 902 (La. App. 3rd Cir.1983), writ denied 433 So.2d 1048 (La.1987), an award of $50,000 was made for the pain and suffering of a decedent who lived approximately 10 hours after an accident where she was conscious most of the time and in pain.
Based upon the facts of this case and awards made in similar cases, we find that the lowest award that may be made for pain and suffering in circumstances such as existed in this case is $35,000. Accordingly, we amend the trial court judgment to raise the award for Wilson Jackson's pain and suffering to $35,000.

Wrongful Death Awards
The plaintiffs also contend that the award of $25,000 to each of Mr. Jackson's seven children was so low as to constitute an abuse of discretion. Using the standards for review outlined above, as applied to the facts of this case, we find that the award made by the trial court does not constitute an abuse of discretion.
The Jackson children, ranging in age from 46 to 67 years, testified at trial concerning the relationship with their father. Two daughters, Lillie Jackson Wilson and Theresa Jackson Gilliam, live in Lake Charles, Louisiana. They testified that they remained in frequent contact with their parents by telephone and that they visited their parents for birthdays, holidays and reunions.
The other five children live in California. They testified that they returned to Louisiana for holidays and reunions and talked frequently with their parents by telephone. The record also shows that Mr. and Mrs. Jackson occasionally visited their children in California.
The Jackson children and grandchildren contributed to the purchase of the vehicle *1078 Mr. Jackson was driving at the time of the accident. Mr. Jackson enjoyed an exceptionally warm relationship with his children, even though they were all well past the age of majority and did not live in close proximity to him.
However, given the circumstances of this case and particularly because the children are all adults, we do not find that the trial court award of $25,000 per child for the loss of their father was excessively low. Therefore, we affirm the trial court award.[4]

CONCLUSION
For the reasons stated above, we affirm the trial court judgment granting the motions for JNOV. We reverse that portion of the trial court judgment finding both Mr. Jackie Curtis and Mr. Wilson Jackson to be at fault and assessing fault at 80 percent to Mr. Curtis and 20 percent to Mr. Jackson. We find Jackie Curtis to be the sole cause of the accident and assess his degree of fault at 100 percent. Therefore, because no fault is assessed to Mr. Jackson, the awards to the plaintiffs and Progressive American Insurance Company are not reduced. We also affirm the trial court award of $25,000 to each of the decedent's seven children for loss of their father. We amend the trial court judgment as to Wilson Jackson's pre-death pain and suffering and hereby increase that award to $35,000. In all other respects, not mentioned herein, the judgment of the trial court is affirmed. Costs are assessed to the defendants.
AMENDED IN PART, AFFIRMED IN PART, AND REVERSED IN PART.
NOTES
[1] We note that in their brief, the defendants only generally mention the issue of damages. They did not argue that the trial court awards on specific elements of quantum were erroneous. The defendants only argue that the trial court erred in granting the JNOV as to liability.
[2] We note that in the trial court's written reasons for JNOV, the court was reluctant to assess any fault to Mr. Jackson on the basis of Tucker v. Lirette, 400 So.2d 647 (La.1981).
[3] As set forth above in footnote 1, the defendants have made no specific complaint regarding the amounts of damages awarded by the trial court. Matters not specifically briefed are considered abandoned. URCA 2-12.4. Therefore, we address only those items of damages specifically assigned as error in the plaintiffs' brief. The plaintiffs agree with all awards made by the trial court except the award to the children for loss of their father and the award for the pain and suffering of Wilson Jackson prior to death.
[4] Awards to major children for loss of a parent range from $15,000 to $75,000. See and compare Thompson v. Tuggle, 486 So.2d 144 (La. App. 3rd Cir.1986), writ denied 489 So.2d 919 (La.1986); Booty v. Kentwood Manor Nursing Home, Inc., 483 So.2d 634 (La.App. 1st Cir. 1985) writ denied 486 So.2d 754 (La. 1986); Watson v. C.R. Bard, Inc., 557 So.2d 739 (La.App. 2d Cir. 1990), writ denied 563 So.2d 880 (La.1990); Keating v. Holston's Ambulance Service, 546 So.2d 919 (La.App. 3rd Cir.1989); Thomas v. State Farm Insurance Company, 499 So.2d 562 (La.App. 2d Cir.1986) writs denied 501 So.2d 213, 215 (La.1987); Burgess v. City of Shreveport, 471 So.2d 690 (La.1985); Archie v. Board of Supervisors of Louisiana State University, 543 So.2d 1348 (La.App. 1st Cir.1989); Humphries v. Louisiana Department of Public Works, 545 So.2d 610 (La.App. 3rd Cir.1989), writ denied 548 So.2d 1249 (La.1989); McGillivray v. Rapides Iberia Management Enterprises, 493 So.2d 819 (La.App. 2d Cir.1986).