h GASKINS, J.
In this wrongful death action, the plaintiffs, Susie Edwards, Eula Mae Johnson, Alfred Williams and Albert Williams, Jr., appeal a judgment granting their motion for judgment notwithstanding the verdict (“JNOV”) on the issue of damages and denying the motion with respect to the jury’s allocation of fault. For the following reasons, we affirm.
FACTS
On July 28, 1997, the decedent, Willie Mae Williams, a 78-year-old mother of four adult children, died of hyperthermia or heat stroke. The decedent had been a tenant in an apartment complex located in Shreveport from 1982 until her death. New Zion Apartments Limited Partnership (“New Zion”) had purchased the apartment complex in April 1997. The apartments were old and were not air conditioned. However, decedent had installed a window-unit air conditioner in her apartment. A number of the apartments were unoccupied and in disrepair. New Zion began a substantial renovation project, including installation of new windows, floor coverings, kitchen and bath fixtures and central air conditioning in all of the apartments.
During the renovation, the tenants could not remain in their apartments. The manager gave them the choice of temporarily moving off-site or to another apartment in the complex. Although three of decedent’s four children lived in Shreveport, she decided to move into a nearby unoccupied apartment that had not been remodeled, but did have new windows. Decedent’s youngest son, Alfred Williams, moved her belongings to the temporary apartment, including the window-unit air |2conditioner, but he did not install the unit. Alfred later testified that he thought the air conditioner would not fit in the window because there was nothing to hold it in place.
In late July 1997, the temperatures were extremely hot in Shreveport. The weather was described as a “killer heat wave” by the Caddo Parish Coroner, Dr. George McCormick, who also reported that there were ten heat-related deaths that summer and that most were elderly individuals.
While she was staying in the temporary apartment, the decedent made a number of phone calls to 911 complaining about the high temperature in her apartment. Shreveport Police Officer Rita Caldwell, a community liaison officer, responded to decedent’s complaints. Officer Caldwell visited decedent in decedent’s apartment on two or three occasions, when decedent stated that she wanted to return to her original air-conditioned apartment. Caldwell noted that the windows and door were closed and that the temperature was “pretty hot” inside the apartment. Caldwell advised the decedent that the apartment *520 was too warm and that she needed to open the windows or door for ventilation, but decedent was unwilling to do so because of her fear of a break-in. During the weekend preceding her death, decedent left five or six messages on Caldwell’s office answering machine complaining about the temperature in her apartment.
On the morning of July 28, 1997, assistant manager Lakecia Webb telephoned decedent’s son, Alfred, after decedent did not answer her door. Alfred went to the apartment, looked in the window and saw his mother’s [3feet, but she was not moving. The apartment complex maintenance man forced open the door and decedent was found lying on a daybed. The two men carried decedent outside, placed her body on the ground and attempted CPR until Fire Department emergency personnel arrived. The decedent did not respond and was pronounced dead at the scene.
Caddo Parish Deputy Coroner Joseph Johnson arrived on the scene and observed the decedent’s covered body lying on the ground. Johnson entered the apartment and noticed that an air conditioner was on the floor, the windows were closed and he recorded the room temperature as 100 degrees with the door open. The decedent’s body was transported to the Coroner’s office, where Dr. McCormick reported that her core body temperature was 107 degrees approximately three hours after her death.
Subsequently, the plaintiffs, Susie Edwards, Eula Mae Johnson, Alfred Williams and Albert Williams, Jr., the adult children of decedent, filed a petition for damages against the defendants, New Zion, its insurer American Equity Insurance Company, John Turner, William Windham, Clear Horizons Limited Partnership and From tier Insurance Company. Turner, Wind-ham and Frontier Insurance Company were later dismissed from the action and Clear Horizons Limited Partnership was never served.
After a trial, the jury returned a verdict allocating 5% fault to New Zion in causing decedent’s death, 15% fault to the victim herself and 80% fault to the plaintiffs. The jury did not award any damages. Plaintiffs filed a motion for JNOV or new trial. The trial court denied the motion for new trial. However, the court granted the JNOV on the issue of damages, and 14awarded each plaintiff $50,000, but denied the motion with regard to the jury’s apportionment of fault. Plaintiffs appeal the judgment.
DISCUSSION
The plaintiffs contend the trial court erred in denying the motion for JNOV as to the apportionment of fault. Plaintiffs argue that based on the evidence, reasonable jurors could not have assessed plaintiffs with 80% fault and New Zion with 5% fault in the death of their mother.
Motions for JNOV are governed by La. C.C.P. art. 1811. A JNOV is warranted when the facts and inferences point so strongly in favor of one party that the court believes reasonable persons could not arrive at a contrary verdict, not merely when there is a preponderance of evidence for the mover. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La. 1991); May v. Jones, 28,106 (La.App.2d Cir.5/8/96), 675 So.2d 275, writ denied, 96-1466 (La.9/27/96), 679 So.2d 1354.
A motion for JNOV raises the question of whether the jury verdict is supported by any legitimate or substantial evidence. In making its determination, the trial court does not have the discretion to weigh the evidence, evaluate the credibility of witnesses or to substitute its judgment for that of the jury. Matthews v. Arkla Lubricants Inc., 32,121 (La.App.2d *521 Cir.8/18/99), 740 So.2d 787. Upon review, the appellate court must determine whether the trial court was clearly wrong in granting or denying a motion for JNOV. Holt v. Cannon Express Corp., 31,271 (La.App.2d Cir.12/11/98), 722 So.2d 433, writ denied, 1999-0104 (La.4/23/99), 742 So.2d 881.
| fiIn the present case, Susie Edwards, one of decedent’s daughters, testified that she last spoke with her mother early Sunday morning at 7:30 a.m., the day before she died. Edwards stated that decedent did not complain about the heat in the apartment at the time. Edwards testified that she had last visited her mother approximately one to two weeks previously in the morning and at that time the fan was on and the apartment did not feel hot. Edwards acknowledged that she never talked with her mother about the apartment temperature. Edwards testified that a window-unit air conditioner had been installed in decedent’s original apartment, but not in the temporary one because the windows had been replaced and there was not any window facing or other wood to support the unit. Edwards stated that although she was aware the decedent kept the windows closed, she did not tell her mother to open the windows because the screens were missing. Edwards acknowledged that she did not ask the apartment manager to install the air conditioner or window screens. Edwards explained that she did not ask decedent to stay with her during the renovation because her mother wanted to maintain her privacy and would not have moved.
Eula Johnson, decedent’s other daughter and a resident of Houston, Texas, testified that she last saw her mother during a visit on Mother’s Day in May 1997. Johnson stated that she last spoke with her mother two weeks before her death and that the decedent never mentioned that her apartment was too hot.
Albert Williams, Jr., one of the decedent’s sons, testified that he last visited his mother one week before her death. Albert stated that they | ^discussed the heat in the apartment, but he did not speak with the apartment managers about the high temperature or about having the air conditioner installed. In his testimony at trial and in deposition, Albert gave conflicting statements about whether he had asked his mother to stay with him during the renovation.
Alfred Williams, decedent’s other son, testified that he moved the air conditioner to the temporary apartment, but he did not think the unit could be installed because there was nothing to hold it in place. Alfred stated that he noticed the windows did not have screens, but he did not ask the manager that they be installed. Alfred acknowledged that he never discussed the heat in the apartment with the decedent or the manager. He testified that the temperature was not too hot in the mornings when he visited his mother and that there were two fans in the apartment. However, Alfred stated that on the day of his mother’s death, he noticed that all of the windows were closed and that even though both fans were running the apartment felt “real hot.”
Lakecia Webb, the assistant manager of the complex at the time of the incident, testified that she knew the decedent and had seen Alfred at the complex when he delivered his mother’s rent payment. Webb stated that decedent had remarked that she would be glad when she could move back to her original apartment, but did not complain about anything specific in the temporary apartment and did not ask to have the air conditioner installed. Webb testified that she entered decedent’s apartment during the week before her *522 death and noticed that a fan was running, but the windows and door were closed. Webb stated that she told the decedent that the apartment felt [ 7very hot and suggested that she have Alfred or the complex install the air conditioner, but that decedent did not want to go through that trouble since the situation was temporary. Webb acknowledged that the new windows did not have screens and testified that the complex could have installed the screens, but that decedent never asked.
Richard Kirk, the primary subcontractor renovating the apartments, testified that screens were not installed with the new windows, but were stored on site until the apartment was renovated. However, Kirk stated that he would have installed the new screens if asked. Kirk testified that if the management or the decedent had asked, his workers would have installed the air conditioner in decedent’s temporary apartment as had been done for other tenants.
The plaintiffs contend the jury erred in assessing 80% fault to the plaintiffs as a group rather than assessing fault to each plaintiff individually. However, the plaintiffs did not object to the jury verdict form, which grouped the plaintiffs together for the purpose of allocating fault. The failure to object precludes the plaintiffs from raising the issue on appeal. Robinson v. Astra Pharmaceutical Products, Inc., 98-0361 (La.App. 1st Cir.8/31/00), 765 So.2d 378, writ denied, 2000-1225 (La.6/2/00), 763 So.2d 607. In any event, there was no showing that the verdict form confused the jury.
ALLOCATION OF FAULT
In this JNOV motion on allocation of fault, the inquiry is whether the jury could reasonably have reached this 5% assessment against New Zion, |sbased on the evidence presented to it. Plaintiffs argue New Zion bore a greater share of the fault.[1] In general, when premises are leased without air conditioning, the lessor has no duty to make sure that the tenant has air conditioning. Apparently, the jury found that there is a minimal duty toward an older tenant, who has chosen to be relocated within the complex, and who previously had her own air conditioner installed.
Pursuant to Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985), the trier of fact compares the relative fault of the parties in the assessment of liability. In assessing fault, the factors to be considered include whether the conduct resulted from inadvertence or involved an awareness of the danger, how great a risk was created by the conduct, the capacities of the actor, whether superi- or or inferior, and any extenuating circumstances requiring the actor to proceed in haste, without proper thought. Watson, supra.
Fault was assessed among the plaintiff children, the deceased, and New Zion. Under Watson, supra, we are instructed to look at the capacities of the actors and determine whether their position was superior or inferior. The evidence showed that Mrs. Williams was mentally capable and strong-willed.' She was aware of her situation, as seen by the 911 calls, but she did not convey these same concerns to her children or to New Zion. When the New Zion assistant manager offered to have the air conditioner installed, Mrs. Williams refused the complex’s assistance. Additionally, any suggestions by the officer to ventilate the apartment were met with | ¡¡resistance. Mrs. Williams was in a superior position to know how hot *523 her apartment was and to take steps to cool the apartment or to move.[2]
The trial court properly denied the JNOV on the issue of fault allocation, finding that a reasonable jury could have arrived at the verdict it reached based on the evidence presented to it.
DAMAGES
The plaintiffs contend the trial court erred in awarding inadequate wrongful death damages. They argue that the evidence supports an increased award of $150,000 to each child of the decedent.
In modifying the jury’s damage award, the trial court does not sit as an appellate court. Rather, the trial court’s assessment of damages is an independent determination. Jackson v. A.L. & W. Moore Trucking, 609 So.2d 1064 (La.App. 2d Cir.1992).
Before the trial court’s damage award may be disturbed, the record must clearly show that the factfinder abused its broad discretion in making the award. Jackson, supra. The finding of an abuse of much discretion must be based on the particular injuries sustained and their effect on the particular injured person. After a determination that an award is an abuse of discretion, the appellate court may lower an excessive award to the highest amount or raise an inadequate award to the lowest point reasonably within the factfinder’s discretion. Jackson, supra.
10 In the present case, plaintiffs presented testimony regarding the decedent’s relationship with each of her children. The plaintiffs testified that they enjoyed a close relationship with the decedent. Susie Edwards recalled fishing, visiting relatives and attending family reunions with her mother. Edwards stated that decedent baked the cakes for her wedding. Edwards testified that she will miss speaking with her mother, going on fishing trips together and hearing her mother sing and pray.
Eula Johnson testified that she had visited decedent on Mother’s Day, approximately two months before her death, and that she enjoyed her mother’s periodic visits with her in Houston. Johnson stated that she often sent gifts to her mother, who enjoyed sewing and gave her children hand-sewn pillow cases and quilts.
Albert Williams testified that he spoke with his mother almost every day and visited her often. Albert stated that he frequently sought his mother’s advice and that he will miss their long talks and drives together.
Alfred Williams testified that when he was growing up, his mother stressed to her children the importance of getting an education and taught them to pray. Alfred stated that his mother often called him after she had cooked and they ate together, talked and then took a nap.
The trial court heard the testimony concerning the plaintiffs’ affection for their mother and their sense of loss over her death and considered the particular facts of this case. After reviewing the record, we conclude that the awards of $50,000 to each plaintiff do not fall below the amount reasonably within the trial court’s broad discretion in assessing damages. In Consequently, we cannot say the trial court’s awards of wrongful death damages are inadequate. The assignment of error lacks merit.
*524 CONCLUSION
The judgment is affirmed. Costs of this appeal are assessed to the plaintiffs-appellants.
AFFIRMED.
WILLIAMS, J., dissents and assigns written reasons.

. New Zion did not contest this assignment of 5% fault.

. Had this court been the trier of fact, it would have allocated the fault assigned to the plaintiffs by the jury to the mother. However, the plaintiffs are not asking that their allocation of fault be reassigned to their mother, but that it be allocated against New Zion.