CARAWAY, J.,
dissenting.
hi respectfully dissent from the majority’s ruling.
In this case, the jury found the plaintiff Caskey partially at fault for not seeing the tree in the road. The judiciary has now found no fault. The jury viewed the plaintiff as suffering from a long history of a disabling disc condition before the accident. The trial court and the majority found that a ruptured disc occurred in the accident.
The jury’s verdict rests on those two factual rulings which the trial judge and the majority have now determined that reasonable people could not have rendered. In order for the jury’s verdict to be erased by the trial judge, that is indeed the test of his authority for the JNOV ruling. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991); Daye v. General Motors Corp., 29,118 (La.App.2d Cir.5/21/97), 712 So.2d 120, rev'd on other grounds, 97-1653 (La.9/9/98), 720 So.2d 654; Jackson v. A.L. & W. Moore Trucking, 609 So.2d 1064, 1071 (La.App. 2d Cir.1992). On the other hand, if the jury received evidence of “such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions” from the trial judge’s JNOV rulings, then the JNOV was improper. Anderson, supra at 832.
In determining whether the trial judge erred in granting the JNOV, the appellate court’s standard of review is de novo in that the court must again review all facts in the light most favorable to the jury’s conclusions which the trial judge overturned. Daye, supra. The motion for JNOV presented the trial- judge a legal question of whether there was sufficient evidence to ^support the jury’s verdict. That same legal question must be reviewed again by the appellate court by determining whether the jury’s verdict is supported by competent evidence and is not wholly unreasonable. Id. Just as the trial judge in considering the motion for JNOV may not substitute or elevate his views on credibility or the inferences from the evidence over other reasonable choices of the evidence which the jury had to weigh, our appellate review of the JNOV, giving no deference to the trial judge’s factual conclusions, considers the evidence anew (de novo) resolving all reasonable inferences, factual disputes and credibility evaluations in the light most favorable to the jury’s verdict in the determination of whether reasonable people could have reached that verdict. Id.
The first fact issue concerns Caskey’s contributory fault in the accident. Was the jury’s verdict that Caskey was partially at fault in the accident one which reasonable people could have not rendered? Importantly, any judicial reaction to the *203 jury’s odd assessment of 79% of the fault against Caskey is not appropriate. The apportionment of fault is not the threshold inquiry. The question is whether Caskey can be considered partially at fault in the accident regardless of his percentage of fault. I find that a reasonable view of the evidence supports a conclusion of contributory fault.
A most important fact admitted by Cas-key is that he only first saw the tree 8 feet from striking it and made no reaction. As Caskey’s vehicle approached the fallen tree, the rural roadway was dark and it was possibly | gaining.[2] Nevertheless, there was no fog hindering visibility and, with the brunt of the storm having passed, the rain was not described by any witness as a heavy downpour. Caskey’s report of his speed at 45 miles per hour is also not in question. Thus, under these conditions, it is reasonable to conclude that without any other factor, Caskey should have seen the tree and its leaves and branches before his vehicle was only 8 feet from striking it.
Caskey’s argument to this court discusses a curve in the road even though his testimony at trial did not place any emphasis on the sudden appearance of the tree as he was rounding the curve. While the photos of the site show a curve beyond the fallen tree, the distance to the curve indicates that Caskey’s vehicle would have been directly approaching the tree for a much greater distance than 8 feet. I recognize that the depth perception issue surrounding a photo requires an actual measurement for accuracy. Yet, there was no evidence presented by Caskey of the measurement of the distance from the fallen tree to the curve, and the indication of the distance gained from the photos favors a view that Caskey’s vehicle was approaching the tree straight on for some distance with his bright lights illuminated. Also, the DOTD’s map of the construction site shows Highway 4 extending eastward without depicting a curve for an unspecific distance from where the servitude began and the tree fell. The jury therefore could reasonably conclude that Caskey had exited the curve and should have seen the tree from a much greater distance than 8 14feet and been able to have reacted and slowed the vehicle. Such inattentiveness, possibly connected with Caskey’s medications, was weighed by the jury and determined to amount to contributory fault by Caskey.
Next, there is a vast difference between the jury’s award of $1,872.50 in general damages and the JNOV awards of the trial judge of $175,000 (pain and suffering and loss of enjoyment of life). This is explained by the second critical fact dispute which concerns the specific injury which plaintiff suffered. The trial court specifically found that Caskey suffered a herniated disc in the accident, a new and severe injury. Merrick presented evidence of Caskey’s long history of degenerative lumbar disc disease, his previous diagnosis of the herniated disc condition, and his prior disability. The jury obviously found that no disc injury occurred in the accident. Under the previously cited JNOV law, the question for resolution of this disputed issue of fact is whether reasonable people could have arrived at a verdict that no disc herniation resulted from the accident.[3]
*204 The 58-year-old plaintiff has been disabled since 1983 and receiving supplemental social security benefits. Caskey testified that he began to have symptoms of osteoarthritis in 1995 and started seeing Dr. Rebecca Crouch. Caskey admitted that in 1995, before he began treatment with Dr. Crouch, he had been diagnosed with a herniated disc. By December of 2001, because Caskey had established a pattern of refilling his prescriptions so | Bquickly, Dr. Crouch refused to issue any further refills of the narcotics. Dr. Crouch testified that she believed Caskey was getting addicted to the Lorcet. She talked with Caskey about taking the medication as ordered as well as pain management.
In contradiction and asserted impeachment of Dr. Crouch’s conclusion regarding the occurrence of the disc herniation, Merrick offered the following written reports from Caskey’s medical records:
(i) April 2, 2008 letter from Dr. Crouch to Caskey’s attorney in which she discussed Caskey’s pre-existing osteoarthritis and previous back x-ray of 2001. She also stated that post-accident x-rays showed the narrowed space at L1-L2. She stated that “it [was] possible that the damage to the disc could have occurred then. However, this disc degeneration could have also occurred over the 3 years in-between.” In a closing summary to the letter, Dr. Crouch concluded that “no definite statement regarding the timing of the disc herniation whether pre-injury or post-injury can be made.”
(ii) May 12, 1997 letter from Dr. Scott Wiggins, Caskey’s cardiologist, in which Dr. Wiggins informs another physician that Caskey “state[d] he has chronic low back pain, for which he is seeing you, and that he may end up requiring back surgery in the future for a ‘slipped disc.’ ”
(iii)December 15, 1997 Louisiana State University Medical Center Outpatient Clinic Record which indicated MRI results as “mild broad band disk herniation which contacts but does not deform thecal sac and SI nerve root changes.”
From this evidence, the jury could arrive at the contradictory verdict that Cas-key had the herniated disc condition before the accident and that the accident served to aggravate his existing disabling condition. Thus, as in the recent Supreme Court ruling in Guillory v. Lee, 09-0075 (La.6/26/09), 16 So.3d 1104, where the court of appeal improperly had replaced the jury’s view of the disc injury for its own, the reinstatement of the jury’s ruling for an aggravation of plaintiffs existing disability is proper. While 11 ¿would agree that the jury’s low quantum award was an abuse of its discretion, such conclusion does not justify the amendment of the jury’s verdict with a finding of a completely different injury.

. Caskey gave no testimony about rain. But, other witnesses reported rain after the accident.

. This issue is different from the question of the amount of damages for pain and suffering which has a different standard of review by both the trial judge in a JNOV review and the appellate court. Again, any judicial reaction to the extremely low and odd quantum figure of $1,872.50 for pain and suffering does not allow the judiciary to find an injury completely different from what the jury reasonably determined.