COVINGTON, Chief Judge.
Plaintiff sued for an injury he received while a patient in Silkworth Treatment Center, a facility owned and operated by defendant HCA Health Services of Louisiana, Inc. (HCA). The injury was allegedly inflicted by Brian (Bryan) Yaun, another patient. After a trial by jury, judgment was rendered in accordance with the verdict in plaintiff’s favor for $7,719.90, plus interest and one-half of the court costs. Assessment of fault was 10 percent to HCA, 45 percent for Yaun and 45 percent attributable to plaintiff. Plaintiff appealed, alleging that the jury erred in its assessment of fault and abused its discretion in the award of damages. Defendant HCA answered the appeal, also contending that the assessment of fault was erroneous, in addition to complaining of the denial of its motion for judgment notwithstanding the verdict. We affirm the judgment.
FACTS AND EVIDENCE
Plaintiff entered Silkworth Treatment Center on February 15, 1984, for treatment of a 25-year alcohol abuse problem. He was referred from Phase I of treatment, that is, detoxification, evaluation and assessment, to Phase II, or inpatient therapy, on February 18, 1984. Phase II includes recreational therapy, the purpose of which is to teach a patient to enjoy life without alcohol and to help him to obtain social skills without alcohol.
Mr. Partin had been admitted to Silk-wood by Dr. Louis Cataldie, an addictionol-ogist, or specialist in the treatment of chemical dependency. Initially plaintiff was given Serax, a detoxification medication which allowed him to withdraw from alcohol, a mood-altering chemical, without danger. The Serax was discontinued on February 20, 1984, and by the time of plaintiff’s injury on March 7, 1984, Mr. Partin had been out of withdrawal for roughly two and one-half weeks. Dr. Ca-taldie testified that while the patient did not receive a physical exam on a daily basis, he was monitored on a daily basis for his blood pressure and vital signs. These were reviewed by the staff on a regular basis in the mornings.
Plaintiff was injured while in recreational therapy during a volleyball game with the other patients in Phase II. He alleged *563 that another patient, defendant Brian (Bryan) Yaun, invaded Mr. Partin’s position and crushed his left foot in an attempt to hit the ball. Plaintiff sustained a commi-nuted fracture of his fifth metatarsal, or the small bone in his foot, as well as another small, nondisplaced fracture at the base of this bone. He subsequently underwent two surgical procedures under general anesthesia for the insertion and later removal of metal pins which had served to hold the splintered parts of the bone together during the healing process.
Mr. Partin sued HCA and Yaun. At trial he attempted to establish the hospital’s liability on several grounds, but primarily inadequacy of the physical facilities for volleyball, and inadequate supervision by the staff of the volleyball game. For the purpose of proving the former, he offered the testimony of Dr. Carl A. Hill, Assistant Director of the School of Health and Physical Education, Recreation and Dance at Louisiana State University in Baton Rouge. Dr. Hill was offered as an expert in physical education safety or recreational safety after a lengthy examination by counsel and the trial judge, outside of the jury’s presence, as to his qualifications. While the judge ultimately allowed Dr. Hill’s opinion testimony to be admitted, he did so only after expressing grave reservations as to the applicability of Dr. Hill’s expertise to this ease. Moreover, he did not rule on the relevancy of Dr. Hill’s qualifications and expertise to this case, but left that question to the jury to resolve.
Dr. Hill’s opinion was that the standard regulations and conditions for playing volleyball were applicable under all circumstances, whether the game was for recreational therapy purposes or physical education or intramural competition purposes. He testified that the size of the volleyball court was the most influential factor in plaintiff’s injury. He stated that a regulation volleyball court measures 30 feet wide by 60 feet long. It was stipulated that the measurements of the recreational therapy room were 30 feet wide by 37 feet long. Dr. Hill concluded that because of the court size, the chances of collision and injury among the players were increased. He also testified that a lack of better supervision and lack of better instructions were contributing factors in the plaintiff’s injury. However, Hill admitted that this injury could have happened on a regulation-size court, under all optimum conditions, such as thorough instructions and [high] player ability.
Dr. Hill’s testimony was countered in certain respects by that of several other witnesses. Gordon Taylor, a recreational therapist who was refereeing the game in which plaintiff was injured, concluded that the back boundary (shorter length) of the volleyball court had nothing to do with the accident, as Mr. Partin did not crash into the wall. It was undisputed that a collision occurred between two players who were standing side by side. As noted previously, the width of the recreational therapy room was stipulated to be 30 feet, which is also the width of a regulation volleyball court.
Beryl Smith, the nurse-coordinator/head nurse at Silkworth at the time, testified that the purpose of recreational therapy in an alcohol abuse program was not for building muscle or body tone, unlike other physical education or exercise programs. Its purpose is therapeutic, to promote recognition that mood altering chemicals, like alcohol, are not essential to recreation or social skills. Her testimony was supported by Dr. Cataldie in this regard. Thus, one might conclude that different physical facilities might be acceptable in view of the different goals and aims of recreational therapy from physical education.
Several staff members from Silkworth and its affiliate, Parkland Pavilion, some of whom had participated in the recreational therapy sessions with the plaintiff, testified that instructions were routinely given at the beginning of the activities. A copy of the instructions for volleyball which were given to the patients were offered as evidence. Plaintiff admitted that some of these had been given at the beginning of the session in question. Gordon Taylor also testified that he had read these instructions at the beginning of the game and allowed time for the players to warm up.
*564 Three staff members present at the time of the injury testified. Two of them, a recreational therapist and a mental health technician, were playing volleyball with the patients and did not see the accident. The third, Gordon Taylor, was positioned at the center of the court at the net so that he could act as referee and did witness the accident. He testified that “the guy who got hurt [Partin] was going after the [b]all and he ran into another guy on his team [Yaun]....”
Plaintiff testified that he was in his own position on the end of the back row looking up at the ball when Yaun ran across him and stepped on his foot. He stated that both of them were going for the ball at the same time. Although it was alleged in his petition and to some extent in brief to the court that he was coerced into playing volleyball by the hospital personnel when he wasn’t feeling well that day, he admitted in his testimony that peer pressure from his fellow patients, made him decide to play, and that the hospital personnel did not make him play.
As to the evidence regarding damages, plaintiff’s orthopedic surgeon, Dr. Charles A. Strange, testified by deposition that plaintiff’s injury was a painful one because the first and fifth metatarsals were most important in walking. The result of Mr. Partin’s injury was a shortening of his fifth metatarsal and a redistribution of some of the square space he has to absorb his weight when he walks. Dr. Strange explained that this is not a limitation, but a difference. He also assigned plaintiff a 15 to 20 percent physical impairment, which he distinguished from a disability, stating that this meant the foot was not the same as it was prior to the injury. Regarding complaints by plaintiff the week before trial of neuroma, or a pinched nerve, Dr. Strange testified that this could be secondary to his injury. However, he also stated that neuroma could occur without injury, and noted that it was first observed in this patient four years after injury. He could not say with medical certainty that it was the result of the injury.
Finally, Dr. Strange stated that he recommended to Mr. Partin that he return in May [1984] to remove the pins inserted in surgery, but the plaintiff did not return until October. At that time there was “exuberant bone growth over the pins, and some bone had to be removed actually to find the pins.” His opinion was that it was “[m]ore likely than not” that plaintiff could have returned to work sooner than February of 1985, if he had returned sooner to remove the pins. Dr. Strange had also prescribed orthotics for Mr. Partin. These are special pads which are “custom built” from molds of a patient’s foot, designed to shift his weight-bearing pattern and redistribute the weight to relieve pain.
Mr. Partin testified that he did not return in May 1984 to remove the pins because he misunderstood Dr. Strange to say that he could keep the pins in place unless his foot rejected them. He explained that his failure to obtain the orthotics prescribed by Dr. Strange was because he didn’t have the money for them, and because he had the impression that they wouldn’t have helped him.
ISSUES AND ANALYSIS
I. Assessment of Fault
Plaintiff argues that the jury erred in assessing him any fault, and that the percentage of fault assigned to the hospital, ten percent, should be increased. Defendants contend that the jury erred in assigning any fault to them, and that Mr. Partin’s actions were responsible for the accident. They also argue that their motion for judgment notwithstanding the verdict was erroneously denied.
A trial court’s finding as to percentages of fault is factual and will not be disturbed on appeal unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stein v. Langer, 515 So.2d 507 (La.App. 1st Cir.1987). Our review of the record reveals that there was sufficient evidence offered to support the jury’s assessments of fault as the trier of fact. Conflicting testimony was offered on several facets of plaintiff’s case, and particularly *565 in regard to how and why the accident happened. It was the province of the jury to evaluate this testimony and make its findings as to fault, based on credibility determinations. While this court may have reached a different conclusion than the jury, we cannot say that there is no evidence to support the jury’s findings.
The only two people to testify about how the accident happened were plaintiff and Gordon Taylor. In evaluating their testimony, which directly contradicted, the jury was entitled to decide, as it apparently did, that both plaintiff and Yaun were going for the same ball and that each was responsible for colliding with the other player. Likewise, the jury heard conflicting testimony regarding the degree and quality of supervision over patients by the hospital personnel, as well as of the suitability of the premises for volleyball and the number of players in the game. Thus, we cannot say that the finding of fault on the part of the hospital was manifestly erroneous or unsupported by the record.[2]
II. Quantum
The jury awarded plaintiff a total of $7,719.90. Judgment was rendered in accordance with the verdict, and also awarded plaintiff interest from date of judicial demand and ordered that costs be divided equally between Partin and HCA. It was stipulated at trial that plaintiffs special damages, consisting of medical expenses and lost wages, totalled $4,719.90. The jury expressly awarded the full amount of plaintiffs special damages and $3,000.00 in general damages. Mr. Partin contends this general damage award is an abuse of discretion. Under the particular facts and circumstances of this case, we disagree.
Before an appellate court can disturb a quantum award, the record must clearly reveal that the trier of fact abused its discretion in making the award. An award made in the trial court may not be modified unless it is unsupported by the record. The appellate question is not whether a different award may have been more appropriate, but whether the trial court’s award can be reasonably supported by the record. Lee v. USAA Casualty Insurance Company, 540 So.2d 1083, 1091 (La.App. 1st Cir.), writs denied, 542 So.2d 514, 515, reconsideration denied, 544 So.2d 384, 385 (La.1989), and the cases cited therein.
The record herein contains testimony that the plaintiff failed to mitigate his damages in two respects: he did not return to his surgeon for the removal of the pins in his foot when told to, possibly allowing excessive bone growth over them to occur and thereby increasing his own suffering from the second surgery; and he did not obtain or use orthotics as prescribed by his surgeon to relieve his pain in walking. While the verdict form does not reveal the reasons for the jury’s general damage award, it is conceivable that this testimony weighed heavily with the jury, even though Mr. Partin offered explanations for both these omissions. In view of this testimony, we cannot say the award is unsupported by the record. In the final analysis, the damages due in a given case must reflect the facts and circumstances of that case. Lee, supra, at p. 1091.
Moreover, the cases cited by plaintiff in support of a higher range of awards for leg and foot injuries involve injuries of greater severity than plaintiff’s to persons requiring a greater degree of medical care who incurred higher medical expenses. We find these cases distinguishable.
For these reasons, the judgment of the trial court is affirmed. Costs for this appeal are to be divided equally between plaintiff and defendant HCA Health Services of Louisiana, Inc.
AFFIRMED.
LANIER, J., dissents and assigns reasons.

. For these same reasons, we cannot say it was error for the trial judge to deny defendants' motion for a JNOV. Reasonable minds could have arrived at different conclusions, based on the differing testimony.